## ESTATE OF JOSHUA HUNT, DECEASED.

### APPEAL BY D. HUNT ET AL. AND J. W. WOOD FROM THE ORPHANS' COURT OF LEHIGH COUNTY.

Argued February 7, 1890—Decided March 17, 1890.
[To be reported.]

1. Grandchildren can be included in the term, "children," in a will, in but two cases: (a) when the will would be inoperative unless the sense of the term "children" were extended beyond its natural import; and (b) where the testator has clearly shown by other words that he did not intend to use the term in its proper, actual sense.

(a) A testator directed by his will that his residuary estate should be divided among the persons legally entitled to it under the intestate laws, but, by a codicil, he provided as follows: "All my personal estate . . . . . shall be divided equally between my wife . . . . . and all my children, share and share alike."

(b) On the margin of the will and codicil, opposite each paragraph, were brief explanatory notes in red ink, and opposite the codicil was written as follows: "Personal estate to be equally divided among all the heirs." The testator left to survive him a widow, children, and the daughter of a deceased child:

2. In such case, the distribution directed by the will must give way to that provided by the codicil; the gift to the children was confined by the codicil to children in the proper sense, and this construction was unaffected by the use by the testator of the word "heirs" in the marginal note.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 218 January Term 1890, Sup. Ct.; court below, number and term not given.

In March, 1888, David Hunt, R. C. Hammersley and R. H. Hepburn, executors of the will of Joshua Hunt, deceased, filed an account in obedience to the order of the court upon the petition of J. Winslow Wood, guardian of Helen L. Hunt, a grandchild of the testator. The account was referred to *Mr. John Rupp*, appointed auditor to hear and determine exceptions filed by J. Winslow Wood, as guardian, to certain credits claimed by the accountants, and to report a distribution.

Before the auditor facts were made to appear as follows: The testator died on July 18, 1886, leaving a will dated August 22, 1881, duly admitted to probate, wherein, after certain specific bequests, it was provided as follows:

Statement of Facts.

"9. I desire and request my hereinafter named executors, or the survivors or survivor of them, to settle up the residue or remainder of my estate as is provided in and by the intestate laws of the commonwealth of Pennsylvania; and in carrying into effect this provision of my will, I do earnestly enjoin upon my said executors the importance of taking all the time necessary to make the most of my estate for those legally entitled to receive it. . . . .

*"Residue of estate to be settled as provided by the intestate laws of the state."*

*"Take time to get best price for residue of estate."*

"10. When I say in paragraph ninth of this, my will, that I desire my executors 'to settle up the residue or remainder of my estate as is provided in and by the intestate laws of the commonwealth of Pennsylvania,' I mean to say that after my estate has been converted into money, as hereinbefore set forth, the fund arising therefrom shall be divided to and among those legally entitled to take and receive the same according to the intestate laws of this commonwealth. . . . : before either my real estate or personal property is sold the same shall be appraised, and that my children shall first have the right to take the same, or any part or parts thereof they may so desire at the appraisement before the same or any part thereof is offered for sale. I make this provision for the reason that my property, particularly some of my stocks, is of more value as an investment than the same would likely bring at a public sale."

*"Remainder to be divided."*

*"Property to be appraised; heirs to have refusal."*

Admitted to probate with the will was a codicil, dated October 29, 1885, which was in part as follows:

"1. I desire that all my personal estate or property of every kind shall be divided equally between my wife, Hannah L. R. Hunt, and all my children, share and share alike, and that my said wife shall have the same right as my children to take any part thereof, that she may want, at the appraisement."

*"Personal estate to be divided equally among all the heirs."*

The will and codicil covered a number of pages of legal-cap

Opinion of Court below.

paper having the usual marginal ruling on the left hand of the page. The body of it was in the handwriting of the testator's counsel, but in the margin, at the left hand of each one of the provisions, was a marginal note, in red ink, in the handwriting of the testator himself. The excerpts above given contain in the smaller type the marginal memoranda opposite them in the original.

At the date of his death, the testator had living a wife, Hannah L. R. Hunt, and children only by a former marriage, as follows: David Hunt, Elizabeth Hunt (intermarried with R. H. Hepburn), Roger Hunt, and Gwenny Hunt. David Hunt and Mrs. Hepburn had children then living, the grandchildren of the testator. By his first marriage the testator had several other children, who had died prior to the date of his will, one of whom, Thomas Hunt, died in 1872, leaving to survive him his widow and a daughter, Helen L. Hunt. J. Winslow Wood was the guardian of Helen L. Hunt, who had never been a member of her grandfather's family, and had a separate income of her own. Her guardian claimed before the auditor that she was entitled to share in the distribution, under the provisions of the codicil; in her behalf, he also attacked certain credits claimed in their accounts by the executors.

The auditor filed a report, in which, after discussing the rules of construction of wills, he held that the marginal memoranda in red ink were notes made by the testator, merely to facilitate his finding any specific provisions in his will, and were in fact but an index, and not substantive provisions; that, under the provisions of the codicil, the testator's estate should be distributed amongst his children, as he had provided; that his granddaughter, Helen L. Hunt, was not entitled to participate in such distribution, and that there was nothing in the will or codicil of the testator to show that he used the word, "children," in any other than its ordinary, popular and legal signification. The auditor ruled, also, that having no interest, the claimant had no standing to except to the credits claimed in the account.

Exceptions having been filed by the claimant, after argument thereof, the court, ALBRIGHT, P. J., filed the following opinion:

The will and codicil were written by an attorney at law.

Opposite to each item and distinct provision of the will and codicil is found writing of the testator in red ink. The will and codicil are in black ink. The instrument in that condition was admitted to probate. The marginal writing made by the testator to both the will and the codicil was made after the codicil had been prepared. To that effect is the recollection of the writer of both, and the evidence furnished by the instrument itself; for what testator wrote opposite item 3 of the will refers to the codicil. It is to be presumed that testator wrote what he did write on the margin before he signed the codicil. All the writing is to be regarded as constituting the will. In the search for the testator's intention, his marginal writing must be considered along with the other writing, the manner and circumstances of its making being borne in mind. In referring to the testamentary instrument, I shall state the substance of its sections, and opposite each, outside of the marginal line on the left side of the page, give italicized what the testator wrote with red ink. As already remarked, he wrote that with the whole instrument before him, and before he signed the codicil. . . . .

The marginal notes in the testator's handwriting are to be taken as part of the will, and it must be presumed that they were made before the execution of the codicil: Wikoff's App., 15 Pa. 281; Linnard's App., 93 Pa. 313.

The testimony taken for the purpose of showing the intention of the testator from his parol declarations, is inadmissible upon the question whether or not Helen L. Hunt is a legatee: Sword v. Adams, 3 Y. 34; Woodman v. Good, 6 W. & S. 169; Appel v. Byers, 98 Pa. 479. The auditor so held, and his opinion on the point was not disputed before the court.

That the effect of a codicil duly executed is to republish the will to which it refers, whether the codicil be annexed to the will or not, is the doctrine of all the authorities. The legal presumption of intended republication may indeed be rebutted by the language of the codicil, but in the absence of any expressed intent to the contrary, it always operates as a new adoption of the will, and a republication at the time when the codicil was made. Upon so plain a subject, it seems almost superfluous to refer to authorities: Justice STRONG, in Neff's App., 48 Pa. 501.

Opinion of Court below.

A codicil should not be held to interfere with any of the specific provisions of a will, unless its language naturally and obviously produce such result, or the terms of the codicil expressly recognize the alteration; or, to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicil: Reichard's App., 116 Pa. 232.

That the intent of the testator must govern, and that the intent is to be gathered from the whole will, is also so well established that authorities for it are unnecessary.

In cases of doubtful construction, the law leans in favor of a distribution, as nearly conformed to the general rules of inheritance as possible: Smith's App., 23 Pa. 1. Whoever claims against the laws of descent, must show a written title which we can with satisfaction decide to be sufficient: Lipman's App., 30 Pa. 180; Grim's App., 89 Pa. 333.

Said BLACK, C. J., in Weber's App., 17 Pa. 474: "There are many wills, (and this is one of them), where it is impossible to say what the purpose or desire of the testator was; and some are so very obscure that it would be a relief to find the ground even for a conjecture. In such cases we can do no better than balance the arguments on either hand, and decide according to what seems their preponderating weight. But if the scale hung perfectly even, there is a rule of interpretation which would settle the case in favor of the appellant. He asks for equality in the distribution, and unless there is a strong reason to the contrary, he ought to have it. . . . . It takes an intelligible will, if not a plain one, to disinherit, either in whole or in part, those who by law are entitled to the succession."

Under a bequest to "children," grandchildren and other remote issue are excluded, unless it be the apparent intention of the testator, disclosed by his will, to provide for the children of a deceased child. The inclusion of grandchildren in the term "children" is only permitted in two cases; that is, from necessity, which occurs when the will would remain inoperative unless the sense of the word "children" were extended beyond its natural import; and where the testator has clearly shown, by other words, that he did not intend to use the word "children" in the proper actual meaning, but in a more extensive sense: Hallowell v. Phipps, 2 Wh. 376. The word "chil-

dren" in a will does not include grandchildren, unless it appears from the context to have been so intended by the testator, or such meaning is necessary to carry out his manifest intent: Castner's App., 88 Pa. 478.

A consideration of the question above stated has brought the court to the conclusion that the granddaughter, Helen L. Hunt, is entitled to a share of the estate converted into money, the same as the children of the testator. The whole instrument, as admitted to probate, shows that, in the distribution of the estate, equality of the children and grandchild was contemplated. The original will is to that effect; it was not the intention to change that provision by the codicil, and, I think, upon the question whether the testator used the word "children," according to the natural import of the word, or in the more extensive sense of including the grandchild, the reasons in favor of the latter meaning preponderate.

Before discussing the points just stated, it may be said that the codicil itself does not exclude the grandchild. The writer of the will wrote that all should be equally divided between the wife and "all my children." The testator wrote opposite to that provision that all should be "divided equally among all the heirs." The testator wrote that, shortly before he signed the codicil, and thus finally declared the disposition of his estate he desired to have made. The writing found opposite to the first item of the codicil, by whatever name it is called, must be regarded as expressive of the testator's intention, or of his understanding of the term employed by the draughtsman of the testament.

In the effort to ascertain the testator's meaning, what he wrote with his own hand is not to be overlooked or disregarded. It is hardly satisfactory to say that the desire to condense in the marginal noting induced the testator to use the words found on the margin. When the writing opposite to the provisions of the will are examined, it is apparent that the testator scrutinized what the draughtsman had written, and that he did not fail to express his meaning or understanding of what he found written, for the sake of brevity.

It is more satisfactory to conclude that the testator meant what he said; that when he wrote "heirs," he meant what the word imports. If he had written there that all his estate should

go to his wife, or to his sons, or to his daughters, or to his grand-daughter, or to all his heirs except his son, equally, I think it would be a difficult task to argue that such direction on the margin must be disregarded, and the word "children" in the body of the codicil prevail. Taken literally, the provision of the marginal writing is inconsistent with that found in the body of the codicil. Then, the codicil is to be read as if one sentence in it excluded the grandchild and the other included her.

To say the least, there is such a doubt as to the construction of the codicil, standing alone, as to compel the application of the law of descent. It is a case where the children cannot show clear authority to exclude the child of their deceased brother. But to return to a consideration of the whole testament, including the codicil.

There is no doubt that the original will contemplated equality of the granddaughter with the children, except, possibly, in the matter of souvenirs mentioned in the seventh item, and that the testator intended to use the word "children" in the sense of "heirs," as including his grandchild. After making certain specific provisions, and directing that the goods should be sold, the testator declares (ninth item) that his executors shall settle up his estate as is provided by the intestate laws of the commonwealth. In the tenth item it is written, in explanation of the ninth, that the meaning is that after the estate has been converted into money the fund shall be divided among those legally entitled to take and receive the same, according to the intestate laws (the executors are vested with a power to sell), and that before either real or personal property is sold, the same shall be appraised, and the children shall have the right to take at the appraisement. On the margin testator wrote "property to be appraised; heirs to have refusal." It is stated that the reason of the provision is that the property, or some of it, is of more value as an investment than it would be likely to sell for. Plainly, the granddaughter was to have this privilege, the same as the sons and daughter. She was not to stand back while property worth more than it would sell for was being appropriated at a valuation that she had no hand in making.

There is nothing in the ninth or tenth items relative to distribution according to the intestate laws, to suggest the idea that she was to receive less in the general distribution than

any one of her uncles or her aunt. After providing for a distribution under the intestate laws, according to which the granddaughter would obtain a share equal to that of each child, the testator added the clause respecting the privilege to take at a valuation, manifestly for the benefit of all, including the grandchild. And, while the draughtsman had written that this privilege was to be enjoyed by the children, the testator wrote that the heirs should have the refusal.

The codicil was not intended to express the entire will of the testator. It is to be taken as if the testator declared it should be as if added to the will. When the codicil was made, there was, not only by virtue of the rules of law, but by testator's own declaration, a new adoption of the will.

The only purpose of the codicil was to reduce the share of the widow, with the unimportant feature of permitting her to take property at the appraisement, in part satisfaction of such reduced portion, and to appoint an executor in place of one of the four who was then deceased. Beyond that, nothing was intended to be effected by the codicil. The provisions of the will as to other matters were to stand. The specific bequests were not taken away. The directions of the will for the appraisement and conversion of the property were not annulled. The distribution of the fund provided in the will remained, except as to the widow who demanded her rights under the intestate laws. She has been paid and has released the estate.

And again; in the codicil the testator wrote "heirs" where the draughtsman had written "children," as had been done in the tenth item; either that he took the word "children" to be as extensive as "heirs" in the case of his descendants, or that he substituted the broader term "heirs" for "children." . . . .

If it is a fact that all the distributees except the guardian of Helen agree that the commissions claimed and the credit for the $1,978.86 shall be allowed, the auditor, if he makes a change respecting said items or either of them, may in the distribution treat it as affecting Helen's share only. The auditor is directed to pass again upon said items of $1,978, and the commissions, there being now an interested party objecting to them.

October 7, 1889: It is adjudged and decreed that J. Winslow Wood, guardian of Helen Hunt, is entitled to one sixth of the balance for distribution. The matter is referred back to the

auditor to pass again upon the matters raised by the eighth and ninth exceptions, and to distribute the balance in accordance with the foregoing opinion and this decree.

—The auditor having filed a second report, allowing the claim of Helen L. Hunt to share in the distribution, but overruling her exceptions to the credits claimed by the accountants, exceptions thereto were filed by David Hunt and others, children of the testator, alleging error in awarding to Helen L. Hunt a distributive share of the estate. J. Winslow Wood, guardian, also filed exceptions, alleging error in overruling the exceptions he had filed to the account.

After argument, both series of exceptions were dismissed, the auditor's report confirmed, and distribution ordered accordingly ; thereupon David Hunt et al., children of the testator, took the appeal to No. 218, specifying that the court erred :

1. In adjudging and decreeing that J. Winslow Wood, guardian of Helen L. Hunt, was entitled to one sixth of the balance for distribution.

And J. Winslow Wood, as guardian of Helen L. Hunt, took the appeal to No. 221, specifying that the court erred :

1–10. In dismissing his exceptions filed to the auditor's report.

*Mr. A. T. Freedley* (with him *Mr. R. E. Wright*), for David Hunt et al:

The testator's absolute direction to his executors to sell his entire property and to distribute the funds, of course worked a conversion of the estate into personalty, and this conversion was not affected by the power given to the children to take at an appraisement: Laird's App., 85 Pa. 339; Pyle's App., 102 Pa. 318.

1. Prima facie, the term " children " means just what it says, subject to two exceptions, viz.: first, when the testator has no living children, and it is necessary to construe the gift to include the grandchildren, in order to prevent the will from being inoperative ; and, second, when it is evident the testator has used the terms, " children," " grandchildren," or " issue," as synonymous terms : Hallowell v. Phipps, 2 Wh. 376 ; Gable's App., 40 Pa. 232; Horwitz v. Norris, 49 Pa. 213 ; Castner's App., 88 Pa. 478 ; Fisher's Est., 13 Phila. 401.

Arguments.

2. It is clear that, in the will and codicil, in no case did the testator confuse his children with his other numerous grandchildren, or with this particular granddaughter; and the auditor's findings of fact, upon the evidence, show that the testator purposely excluded his granddaughter, and that intention was one of the main reasons of making his codicil. It is urged, however, that these red ink marginal notes, having been admitted to probate together with the will, constituted a disposing part of the will itself. But admission to probate cannot create that into a will which would not be so without probate: Bowlby v. Thunder, 105 Pa. 179. It is submitted that these marginal memoranda constituted no part of the will.

*Mr. William S. Kirkpatrick* and *Mr. R. I. Jones*, for J. Winslow Wood, guardian:

1. The will and codicil make the intestate laws the scheme of distribution. In the will, the distribution is the same as under the law. In the codicil, the same persons are to share, but they are to have equality. This method is a very common form of disposition: Fissel's App., 27 Pa. 55. The argument against us is, that " children " of necessity excludes the grandchild. This is unsound, because the will makes the intestate laws throughout and repeatedly the scheme of distribution, and therefore all its provisions are to be considered as though written into the will: Jones' App., 3 Gr. 171; Reichard's App., 116 Pa. 232; Long v. Labor, 8 Pa. 232.

2. Our client is an heir. Her right is doubly given by the law and by the original will, and nothing but words of exclusion can take away her right. The heir is not to be disinherited except by express words or necessary implication: Howe's App., 126 Pa. 233; Rupp v. Eberly, 79 Pa. 141. That this rule has been recognized uniformly in Pennsylvania, appears by all the cases: Bender v. Dietrick, 7 W. & S. 287; McIntyre v. Ramsey, 23 Pa. 317; Hitchcock v. Hitchcock, 35 Pa. 399. Hence, that construction is to be put upon the whole will and codicil as though all the will had been repeated in the codicil: Neff's App., 48 Pa. 501.

3. The question whether a bequest to children includes grandchildren is entirely a question of intention. There is no

case in the books where grandchildren have been excluded by the use of the word "children" in a codicil, when they have been included by a former general devise or bequest. Much less can it be done where, as here, it is under the intestate laws. Hallowell v. Phipps, 2 Wh. 376; Gable's App., 40 Pa. 232; and Horwitz v. Norris, 49 Pa. 213, are to be distinguished, while Castner's App., 88 Pa. 478, is a direct authority against the appellants. Our argument was and is, that in this will, before Helen L. Hunt would be disinherited, the courts would hold that the codicil was precatory. We care not whether the marginal writing be called an index, or a part of the will; it was all made by the testator, and the court has no right to reject it: Howe's App., 126 Pa. 233.

## NO. 218.

Opinion, Mr. Justice Green:

One of our earliest cases, in which the rule that a bequest to children does not include grandchildren was declared, was Hallowell v. Phipps, 2 Wh. 376. It was thus stated by Mr. Justice Rogers in delivering the opinion of this court: "Under a bequest to children, grandchildren and other remote issue are excluded, unless it be the apparent intention of the testator, disclosed by his will, to provide for the children of a deceased child. But such construction can only arise from a clear intention or necessary implication; as where there are not other children than grandchildren, or when the term 'children' is further explained by a limitation over in default of issue. The word 'children' does not ordinarily, and properly speaking, comprehend grandchildren, or issue generally. Their being included in that term is only permitted in two cases, viz., from necessity, which occurs when the will would remain inoperative unless the sense of the word 'children' were extended beyond its natural import, and where the testator has clearly shown, by *other* words, that he did not intend to use the term 'children' in the proper actual meaning, but in a more extensive sense." The above statement of the rule was supported by a citation of numerous decisions which fully sustain it in all its parts. With us it has never been departed from, but has been enforced in many instances, and never with any abatement of any of its terms. Examples of this are Dickinson v.

Lee, 4 W. 82; Barnitz's App., 5 Pa. 264; Horwitz v. Norris, 49 Pa. 213; Castner's App., 88 Pa. 478.

It is very clear that one of the two exceptions to the operation of the rule does not exist in the present case. There are other actual children of the testator, to whom the words of the codicil do apply, and hence there is no reason of necessity for departing from the ordinary meaning of the word " children " as designating the legatees mentioned in the codicil. The other exception is, " where the testator has clearly shown by *other* words that he did not intend to use the term ' children ' in the proper, actual meaning, but in a more extensive sense." All the authorities agree that such intention must clearly appear, and if it does not, the word " children " must be confined to its ordinary meaning.

In support of the contention for the grandchild, much stress was laid upon the marginal notes to the will and codicil, and it was chiefly upon a consideration of the words found in the margin of the codicil that the learned court below held, reversing the auditor, that the grandchild was included in the codicil. The codicil was in these words : " I desire that all my personal estate or property of every kind shall be divided equally between my wife, Hannah L. R. Hunt, and all my children, share and share alike, and that my said wife shall have the same right as my children to take any part thereof that she may want at the appraisement." It cannot for a moment be questioned that these words, by themselves, under all the authorities, clearly exclude the grandchild. Unless the reasoning from other sources plainly shows that she should be included as a legatee, because such was the manifest intent of the testator, she must remain excluded by force of the proper and usual meaning of the word " children " in the codicil. The marginal note by the side of the codicil is in these words : " Personal estate to be divided equally among all the heirs." It is claimed that, as the grandchild would be an " heir " in case of intestacy, she comes within the description of those entitled to the estate, and that the testator must be held to have meant " heirs " in the codicil, instead of " children ; " in other words, that he used the two terms, " heirs " and " children," in the same sense. The first reply to this is that the codicil is the actual, affirmative, testamentary expression, and the marginal note does not even

Opinion of the Court.

purport to be a part of it. It is a mere memorandum, a curt note, or reference to the substance of the codicil. Every section of the will has a similar marginal note by its side, and they were all evidently written, not with a view to make them the substantive testamentary act, but as a short, briefly expressed memorandum of the contents of the will and codicil, to enable the testator to see the whole will at a glance. Of course, if there were a conflict between the literal meaning of a clause of the will as fully written out and the language of the marginal note by its side, the language of the will must prevail. The marginal note could not be more than a mere aid in the ascertainment of the meaning of the testator, where the fully written out clause of the will makes that meaning doubtful. It certainly would not be legitimate to raise the doubt by means of the note, if the intent is clearly expressed in the body of the will, and then reject the plain, clear meaning of the will, and substitute in its place the very questionable meaning of the note, which was neither written nor intended as a part of the testamentary act. The word " children " in the codicil is absolutely free of doubt as to its meaning. A grandchild is not a child, where there are children to answer the description of the legatees. Certainly, it will not do to strike down the plain meaning of that word, which is in the testament, in order to attribute an entirely different meaning to it, because a word which is very commonly used in a doubtful sense is found here, not in the testament, but in a mere curt, untechnical, inartificial marginal reference.

But, in the next place, it is perfectly manifest that the word " heirs " in the marginal note was not used in its technical sense, and therefore does not necessarily embrace the grandchild. That word includes the whole body of those who would or might take a decedent's estate under the intestate law, and is of far broader significance than the word " children" or " grandchildren," or even lineal descendants. Nothing is clearer than that the testator did not use the word in its technical sense. It occurs several times in the notes to the different clauses of the will, and never in its technical meaning. Thus, in the seventh section he uses it as synonymous with " children " only. He there directs that all his children shall be allowed to select such articles as they may desire from his

furniture, silver, and books "as souvenirs of their home."
He then directs that each child shall be charged with the article
selected at the appraisement price, and any portion remaining
after "all my children" shall have selected such articles as
they may desire shall be sold for the benefit of his estate.
This is a privilege which, of course, is limited to his children
only; and yet in the note on the margin of the seventh clause
are the words: "Heirs may select what they may desire, and
take at the appraisement." His grandchild never had her
home with him, and nothing of the articles enumerated could
be a souvenir of her home to her. In the latter part of the
tenth clause of the will he makes the same use of the two
words "children" in the will and "heirs" in the margin. In
the will, he gives to his children a right to take any part of
his real or personal estate at the price at which the same may
be appraised, and in the note he says: "Property to be ap-
praised; heirs to have refusal." The privilege of selection is
limited to the children, and in the margin he refers to them as
heirs.

But, again; the grandchild is nowhere named in the will.
She is not a legatee by name, nor is she even spoken of or re-
ferred to as his grandchild, or, specifically, as a legatee of any-
thing. Under the ninth and tenth clauses of the will, which
give the residue to the persons who would be entitled under
the intestate law, she would be entitled to take her father's
share by representation, and that is the only way in which she
could claim a single penny of the estate. But that method of
distribution is entirely destroyed by the codicil, which substi-
tutes a totally different method. There he directs that the
estate shall be divided equally between "my wife" and "all
my children." Now, under the will the grandchild could
come in, not because she was named as a legatee, but because
she was one of a class to the whole of whom the residue was
given. But under the codicil the gift to that class is taken
away, and another class is substituted in its place: the class
named in the will take nothing, and the class named in the
codicil take everything. The grandchild was a member of the
class named in the will, but she is not a member of the class
named in the codicil; and to let her in under the codicil would
be to destroy the whole scheme of distribution as established

Opinion of the Court.

by the codicil, and to restore the method established by the will. We have no right to do this, and certainly ought not to do it for so very questionable a reason as to admit one who was never named personally or by description in the will, who never could take anything under the will except as a member of a class which can take nothing under the codicil. The scheme of the codicil, of course, must prevail. We cannot possibly let the grandchild into that scheme, unless we force her there in violation of the plainest and clearest words which exclude her absolutely. The only reason for doing this which has any force at all is that she comes within the technical meaning of a word appearing on the margin of the codicil, which it is conclusively certain the testator did not use in its technical sense in any part of the will or codicil, and which could not be enforced in that sense by any possibility. There is, therefore, no clear intent of the testator, manifest upon the face of the will or codicil, to use the word " children " in the codicil in any other than its ordinary and proper meaning, and therefore that meaning must prevail.

As to the facts outside the will, they are of but little significance, but, such as they are, they lead to the conviction that he intended to exclude the grandchild; but it is not necessary to discuss them. The will and codicil have a plain, clear meaning, in our judgment; and it is our duty to enforce it. The decree of the Orphans' Court must be reversed.

> The decree of the court below is reversed at the cost of the appellee, and the record is remitted, with instructions to distribute the estate of the decedent in accordance with the report of the auditor, which is hereby confirmed.

### NO. 221.

OPINION, MR. JUSTICE GREEN:

We have just decided in the case of Hunt's Appeal, ante, 270, that the ward of the appellant in this case has no interest in the estate of her grandfather, the testator, and therefore she has no right to be heard in the proceedings for its distribution.

> Appeal quashed.