## Harrison's Estate.

*Will—Gift to children of sisters—Act of July 12, 1897, P. L. 256.*

Where a testatrix gives the residue of her estate to a trustee to pay out of the income certain annuities, the surplus income, if any, to be paid to " the children of my sisters, in equal shares," and it appears that two grandnieces, children of a niece who had died before the execution of the will and were designated throughout the will as " grandnieces," are the principal objects of the testatrix's bounty, such grandnieces are not entitled to share in the residue, although in a codicil one of the grandnieces to whom pictures are given is designated as a " niece ; " nor will the grandnieces be entitled to share in the residue by force of the provisions of the Act of July 12, 1897, P. L. 256, which saves from lapsing, by reason of death, gifts to brothers or sisters or the children of brothers or sisters, inasmuch as the act of 1897 is confined in its operation to cases of death of a member of a class to whom the gift is made after the date of the will and during the lifetime of the testator.

The effect of the act of 1897 is to provide that where one is within a class designated by the testator as the objects of his bounty, the devise or legacy to him shall not lapse by his death during the lifetime of the testator, but the person so dying must have been a member of the class at sometime in the period during which the will remained ambulatory, between the execution of the will and the death of the testator.

The act was not intended to set up a new rule for the construction of wills and include as primary legatees, persons who did not come within the meaning of the language employed by a testator ; its purpose was to provide for the substitution of the issue upon the death of one who was at the date of the will or subsequently came within the class to which the devise or bequest was made.

Argued Oct. 9, 1901. Appeal, No. 12, Oct. T., 1900, by Violet A. I. Huston, from decree of O. C. Phila. Co., Oct. T., 1898, No. 173, dismissing exceptions to adjudication in the Estate of Philippa Harrison, Deceased. Before RICE, P. J.,

BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. POR-
TER, JJ.   Affirmed.

Exceptions to adjudication.

The facts are fully stated in the opinion of the Superior
Court.

*Error assigned* was in dismissing exceptions to adjudication.

*James F. Hagen* and *Ira Jewell Williams,* for appellant.—The
Act of July 12, 1897, P. L. 256, providing that a legacy to
sisters' children as a class shall not " lapse or become void "
save the bequest to the issue of one comprised within the words
" children of my sisters," though such one was dead when the
will was written : Minter's Appeal, 40 Pa. 101; Guenther's App.,
4 W. N. C. 41; Gross's Est., 10 Pa. 360 ; Willis v. Eastern
Trust and Banking Co., 169 U. S. 307; 18 Sup. Ct. Rep. 347;
Winter v. Winter, 5 Hare, 306 ; Mower v. Orr, 7 Hare, 473 ;
Wisden v. Wisden, 2 Sm. & Giff. 396 ; Barkworth v. Young,
4 Drew, 1.

The act must be construed to cover the present case, because
this construction had theretofore been given in all the states
from which the act was adopted, and must be " deemed to be
written into the later act."

In Moore v. Dimond, 5 R. I. 128, it was held that a devise to
sister's children was within the act, and covered children who
were dead at the date of the will: Jamison v. Hay, 46 Mo. 554;
Guitar v. Gordon, 17 Mo. 408 ; Nutter v. Vickery, 64 Me. 498;
In re Stockbridge, 145 Mass. 519 ; 14 N. E. Repr. 928 ; How-
land v. Slade, 155 Mass. 417 ; 29 N. E. Repr. 631 ; Strong v.
Smith, 84 Mich. 568; 48 N. St. Repr. 183; Moses v. Allen,
81 Me. 268; 17 Atl. Repr. 66 ; Murphy v. McKeon, 53 N.
J. Eq. 409; 32 Atl. Repr. 374; Barnes v. Huson, 60 Barb.
613.

*William M. Stewart, Jr.,* for appellee.—There was no legacy
made in favor of a child of a sister, which the parties here claim-
ing could take by way of substitution under the act: Atkinson
v. Atkinson, Ir. R. 6 Eq. 184; In re Wood, L. R. (1894) 3
Ch. Div. 381; May's App., 41 Pa. 523; Morrison's Est., 139
Pa. 306.

The Act of July 12, 1897, P. L. 256, does not apply by its express terms to a will executed prior to its date; on the contrary, it expressly refers to devises or legacies " hereafter made," i. e., made after July 12, 1897, and cannot, therefore, relate to a will duly executed on October 3, 1896 : Martindale v. Warner, 15 Pa. 471 ; Gable v. Daub, 40 Pa. 225.

The act of 1897 is confined in its operation to cases of death of a member of a class to whom the gift is made after the date of the will and in the lifetime of the testator.

OPINION BY W. D. PORTER, J., January 21, 1902 :

The testatrix died September 28, 1897. Her will was executed October 3, 1896, and there were two codicils dated August 14, 1897. The fund for distribution by the court below in this proceeding was a portion of the residuary estate of the testatrix which had been devised to the Pennsylvania Company for Insurances on Lives and Granting Annuities, in trust to invest the same and pay certain annuities out of the income, and the surplus of such income is to be distributed under the following clause of the will: "From the balance, if any, of said net income, the trustee shall reserve sufficient to insure the payment of said annuities, and pay over the remainder until the termination of this trust, to the children of my sisters, in equal shares." The appellant asserted a right to participate in the distribution of this surplus, under these facts, which were found by the learned auditing judge and are undisputed. At the date of the will and of the codicils thereto, the only living children of the sisters of the testatrix were Susan Beach, daughter of Mary Francis, a sister of testatrix, and John Beard, James Beard and Sarah Barnicoat, children of Grace Beard, who was likewise a sister of testatrix. Mary Francis, the mother of Susan Beach, died many years before the testatrix, leaving, beside Susan, two other daughters, Teresa L. C. Anderson and Julia Millard, both of whom had died long before the execution of the will, viz : Mrs. Anderson, who was the mother of the grandnieces Clara H. Stoops and Violet A. I. Huston, the appellant, in 1883, and Mrs. Millard, whose daughter Julia M. Fuller has not appealed from the decree of the court below, at a date which is not definitely stated, but which clearly appears to have been long prior to the execution of the will.

Mrs. Anderson, who was the mother of appellant and a daughter of the sister of the testatrix, lived with the testatrix until her death in December, 1883, her children, the appellant and her sister, continued to make their home with Mrs. Harrison until each of them respectively was married, the last of said events occurring prior to the execution of the will. The testatrix made Violet A. I. Huston and her sister Clara H. Stoops the chief objects of her bounty, and in each one of the clauses of the original will by which that bounty was conferred, she designated said persons as her "grandnieces," which was the true relationship in which they stood to her. It is true that the last codicil is, "I give to my beloved niece Violet Huston my husband's and my own pictures; oil paintings." This use of the word "niece" in the codicil falls far short of what would be required to justify us in holding that when the testatrix used the words "children of my sisters" in the residuary clause of her will, it was her intention to include grandchildren of her sisters. The terms of the will can be satisfied, and all its provisions carried into effect, without any such forced construction. The will itself affords strong affirmative evidence of the intention to use the word "children" in its literal sense. The testatrix knew that the mother of her grandnieces, Clara H. Stoops and Violet A. I. Huston, was dead; in the body of her will she devised to them valuable real estate and bequeathed personal property to them for life, with powers of appointment by will, largely exceeding in value the entire residuary estate; and every time their names are mentioned in the carefully drawn original instrument, they are coupled with the designation of their true relationship, "grandnieces." It would be difficult to believe, therefore, that when she came to dispose of the small residue of her estate, by creating a trust, she intended to include in the designation children of her sisters, the persons whom she had so repeatedly and accurately designated as "grandnieces." The use of the perhaps familiar designation "niece," in connection with the name of the appellant, in the informal codicil disposing of two family portraits is certainly not sufficient evidence of an intention on the part of the testatrix to use the term "children of my sisters," in the residuary clause of her will in any other than its literal sense : Estate of Joshua Hunt, 133 Pa. 260. The appellant could not take as

an original and substantive legatee under the residuary clause in the will, and, although the claim seems to have been urged upon that ground in the court below, that contention has been practically abandoned here. That the testatrix understood the difference between the meaning of the words "children" and "issue" is made apparent in the second clause of her will, for in the condition to which the devise to Mrs. Huston in that clause is made subject, the devisee is required to convey certain property to the Pennsylvania Company for Insurances on Lives and Granting Annuities in trust; "to pay the net interest and income to my grandniece Violet for the term of her life, for her sole and separate use, free from all interference or control of her husband, and upon her death then to pay the principal to the children or issue of my grandniece Violet, and in default thereof to her next of kin, excluding, however, her husband."

The appellant now contends, however, that being of the issue of Teresa L. C. Anderson, the daughter of a sister of the testatrix who died during the lifetime of the latter and prior to the execution of the will, she is entitled to participate in the distribution of this fund by force of the provisions of the Act of July 12, 1897, P. L. 256: "No devise or legacy hereafter made in favor of a brother or sister, or of brothers or sisters of any testator, or in favor of the children of a brother or sister of any testator, whether such brothers or sisters, or children of brothers or sisters be designated by name or as a class, such testator not leaving any lineal descendants, shall be deemed or held to lapse or become void by reason of the decease of such devisee or legatee, in the lifetime of the testator, if such devisee or legatee shall leave issue surviving the testator; but such devise or legacy shall be good and available in favor of such surviving issue with like effect as if such devisee or legatee had survived the testator, saving always to every testator the right to direct otherwise." This legislation has not and was not intended to have any bearing upon the interpretation of wills; its effect is confined to the manner in which the intention of the testator, as ascertained from the words of the will shall be carried into execution. Whether the person within the class designated by the act, who has died during the lifetime of the testator, was a legatee or devisee within the intention of the testator, must first be ascertained from the language which he used in disposing of

his property. When the devise is to a person by name, it is conclusive as to the intention of the testator that that person should take, and the intention of the testator being established, the subject of the devise or bequest will, upon the death of the testator, be good and available in favor of the issue when the primary devisee or legatee has died during the lifetime of the testator.` This is the effect of legislation of this character, even in a case when the primary devisee was dead at the time the testator specifically designated him as the object of his bounty: Minter's Appeal, 40 Pa. 111; Winter v. Winter, 5 Hare, 306. The legislation in question was no doubt enacted for the purpose of changing the law, as it had been determined in Gross's Estate, 10 Pa. 360, and kindred cases, that in case of a devise to children of brothers and sisters as a class, only those children who were in existence at the death of the testator were entitled, to the exclusion of the representatives of children dying before the testator, but after the date of the will. A bequest to a number of persons not named, but answering a general description, is a gift to them as a class; this rule of construction is intended to settle the testator's intention unless the will itself shows that he intended otherwise: Denlinger's Estate, 170 Pa. 104. Prior to the act of 1897 the persons who constituted the class described by the testator would have been ascertained as of the time when the legacy vested; and it is only in case of a devise or bequest to a class that that legislation has worked any change in the law, for devisees and legatees nominatim, standing in the same degrees of relationship, were protected by the Act of May 6, 1844, P. L. 565. The effect of the act of 1897 is to provide that where one is within a class designated by the testator as the objects of his bounty, the devise or legacy to him shall not lapse by his death during the lifetime of the testator, but the person so dying must have been a member of the class at sometime in the period during which the will remained ambulatory, between the execution of the will and the death of the testator. A testator may by apt words designate the time at which the constituents of a class are to be determined. If he fix upon a time antecedent to the date of his will, then all who had died before that date and all who were born afterwards would be excluded from participation. If he fix upon a definite date subsequent to the execution of

the will then only those in existence when that day arrived could take. When the devise is generally to a class, without designating any time for the ascertainment of the members thereof, the testator is presumed to know that after-born children, answering the description, will be admitted to the class; this is his legal intention. In case of the death of a member of the class during the lifetime of the testator, his legal intention was, prior to the act of 1897, presumed to be that the issue of the person so dying should not participate in the distribution. When the devise is to the children of brothers and sisters as a class, the act of 1897 goes only to the legal effect of the actual intention of the testator as declared by the words of his will; it is now presumed to be the legal intention of the testator that when a person who is actually within the class dies leaving issue such issue shall take by substitution. The language of Mr. Justice RODGERS in dealing with a question of this nature, in Martindale v. Warner, 15 Pa. 471, is pertinent: "The question is not as to the corpus of the bequest or its extent, but the difficulty is as to the legatee who is to take. . . . Though a will, it is true, does not take effect till after the testator's death, yet it is inchoate, though not consummate, from the execution of it and for many purposes in law, of which this is one, it relates to the time of the making of it." In Taylor v. Mitchell, 57 Pa. 209, Mr. Justice SHARSWOOD said: "It is true, that every will is ambulatory until the death of the testator, and the disposition made by it does not actually take effect until then. General words apply to the property of which the testator dies possessed, and he retains the power of revocation as long as he lives. The act of bequeathing or devising, however, takes effect when the will is executed, though to go into effect at a future time." A will speaks for some purposes from the period of its execution: Quin's Estate, 144 Pa. 445. When the testatrix incorporated this residuary clause into her will, the children of her sisters only were designated, to them only was the bequest made. They alone were in her mind; they alone were the objects of her bounty; not another single human being. She made her will with reference to the objects of her bounty as they existed at the time, and as though her will took effect at the date of its execution, not apprehending that any of the members of the class which she designated as the objects

of her bounty should die before her. The law supplemented her actual intention by writing into the will the legal intention that children afterwards born into the class should take. She may not have known the legal result of the death of one of her legatees, whom she had designated by description, prior to the vesting of the legacy. The provisions of the act of 1897 are just and conformable to the probable intention of the testator in every instance. The argument in support of the legislation was that, the fact that the child or relative is not mentioned by name should not defeat the real purpose of the testator, where the language, applied to the facts as they were at the execution of the will, designated a child or relative as an object of the testator's bounty with as much certainty as if it were mentioned by name. The act was not intended to set up a new rule for the construction of wills and include as primary legatees, persons who did not come within the meaning of the language employed by a testator, its purpose was to provide for the substitution of the issue upon the death of one who was at the date of the will or subsequently came within the class to which the devise or bequest was made. The mother of the appellant having died prior to the execution of this will never was a member of the class to which the bequest was made, and there was, therefore, nothing which the appellant was entitled to take by substitution: Gray v. Garman, 2 Hare, 268; Martha May's Appeal, 41 Pa. 512; Long v. Labor, 8 Pa. 229. This seems to be in harmony with the construction placed by the Supreme Court upon the Act of April 8, 1833, P. L. 250, relating to legacies to lineal descendants. In Bradley's Estate, 166 Pa. 300, it was held that where a member of the class dies after the date of the will leaving issue, such issue took by substitution; while in Hunt's Estate, 133 Pa. 260, where the devise was of personal estate "to all my children," it was held that the issue of a son who died prior to the execution of the will must be excluded. The numerous decisions of the courts of other states cited by the learned counsel for appellant were made in construing statutes similar to our Act of May 6, 1844, P. L. 565, and as they are in conflict with the decisions of our own Supreme Court in Gross's Estate, 10 Pa. 360, and Guenther's Appeal, 4 W. N. C. 41, we cannot recognize them as authority in construing the act of 1897. We have not considered whether the making of the codicils of Au-

gust 14, 1897, republished the entire will as of that date, and so brought it within the operation of the statute, for the reason that Mrs. Anderson was not a legatee and her daughter can take nothing by force of the statute.

The decree is affirmed and the appeal is dismissed at costs of the appellant.