## Weber Estate.

Argued April 12, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

*George F. Whitmer,* for appellant.

*Lloyd F. Weaver,* for appellee.

OPINION BY BALDRIGE, J., July 15, 1944:

Joseph Weber died February 26, 1942. He executed his will on October 30, 1937, when he was 83 years of age and in poor health. It was admitted to probate and no attack was made on its validity. The 4th clause of the will gives rise to the present dispute. It reads as follows: "4.  I direct the rest and residue of my estate to be distributed among my brothers and sisters in equal shares, except my brother Leonard Weber is not to take or share in my estate. If any of my said brothers or sisters (except Leonard) shall die, the descendants of such dying shall take the share of such deceased parent."

The decedent, when his will was signed and at the time of his death, had but one sister, Mary Snyder. His brother Leonard, whom he expressly disinherited had not been heard of for many years. His only other brother, Michael, died January 27, 1933, about four years before the execution of the will, leaving eight children to survive him, who now claim half of the residuary estate and are the appellants in this case.

The auditor, appointed to distribute funds in the hands of the executor, and the court below held that

the sister, Mary Snyder, was entitled to the entire fund for distribution. The children of Michael Weber, nephews and nieces of the testator appealed.

The bequest of the residue to be distributed among his brothers and sisters in equal shares, without naming them specifically, was a gift to a class; this well recognized rule of construction determines the testator's intention unless other language in the will shows a different intention. It has been held uniformly that where a gift is to a class the share of the one within the class designated by the testator shall not lapse by his death occurring in the period between the execution of the will and the testator's death: *Harrison's Estate,* 202 Pa. 331, 335, 51 A. 976; *Wood's Estate,* 321 Pa. 497, 500, 184 A. 13; *Worstall's Estate,* 125 Pa. Superior Ct. 133, 190 A. 162; *McCarty's Estate,* 138 Pa. Superior Ct. 415, 10 A. 2d 790. Michael, having died before the execution of the will, was never a member of the class of legatees mentioned by the testator in his will. If the testator had been survived by brothers other than Leonard, and sisters, no doubt would have arisen that only those within that class at the time of the execution of the will, or the children of a deceased member of the class, who died after the execution of the will, would share in the fund for distribution; that nephews or nieces, children of a brother or sister who had died previous to the execution of the will would have had no share in it. Does the fact that the testator had but one sister and the disinherited brother at the time the will was executed warrant the changing of the rule of construction to permit the children of a deceased brother, never within the class mentioned, to receive one-half of the fund in the executor's hands? The will is written in technical language and the interpretation usually placed thereon should not be defeated by "*supposed* contrary intention, which is merely *inferred* from what appellants presume would be testator's in-

tention ......" *Rosengarten Estate,* 349 Pa. 32, 37, 36 A. 2nd 310. In considering this will the question before us is not what the testator meant, but what the meaning of his words is: *Ludwick's Estate,* 269 Pa. 365, 112 A. 543. If we are to construe the language of the will in disregard to the ordinary canons of construction, then a contrary intention must plainly appear. Viewing the will from its four corners, as we must (*Sarver's Estate,* 324 Pa. 349, 188 A. 141), we do not find that to be the case. If we assume the provisions of the will are uncertain and ambiguous then we must resort to the artificial rules of construction. They support the conclusion that only those who come within the class mentioned were in the contemplation of the testator.

The appellants stress the point that the testator must have intended in directing a distribution among his "brothers and sisters in equal shares" to divide the residue of his property so that others than his sister would participate therein. It is difficult to explain why "brothers" was used when one brother was expressly excluded from sharing in his estate, but he also used the word "sisters" when he had but one sister. The fact remains that he expressly gave the residue of his estate to a class. Only those within the class are the objects of his bounty. The understating or overstating of the number that comes within the class does not change the construction of a will. A gift to a class is not to a definite, but generally to an uncertain, number and the number only affects the amount that those entitled to participate shall receive: *McMasters v. Shellito,* 14 Pa. Superior Ct. 303; *Urie v. Irvine,* 21 Pa. 310.

There was a further objection to the adjudication which awarded to Mrs. McCloskey, a married woman living with her husband, a claim for room rent, board and nursing of the decedent. The only objections filed thereto were by the appellants in this case, who, under our ruling, are not entitled to participate in the fund

for distribution. We have not been convinced, however, that there is substantial merit to the exception to the findings of the auditor affirmed by the orphans' court.

The decree of the court below is affirmed at the appellants' costs.