## Simonson Estate

*George O. Frazier,* for accountant.

*Thomas J. Terputac,* trustee ad litem, p.p.

MARINO, P. J., April 19, 1960.—At the audit of the first and final account in this estate, the accountant requested the court to construe paragraph second of the will, which might involve possible interests of two grandchildren of testator. Since the accountant had no knowledge of the whereabouts of the grandchildren, she petitioned for the appointment of a trustee ad litem for them. The said trustee was able to locate the grandchildren, both of whom are living and sui juris.

Decedent disposed of his entire net estate by the second paragraph of his last will and testament, which is the paragraph in controversy. The pertinent facts are set forth in a stipulation and agreement between the accountant and the trustee ad litem. It states:

"1. That decedent, John Alfred Simonson, also known as John A. Simonson, died testate on January 26, 1959, leaving this last will and testament dated July 5, 1946, the second paragraph of said last will and testament reading as follows:

"Second. I give, devise and bequeath all my estate, whatsoever and wheresoever, real, personal or mixed, to which I may be entitled or which I may have power to dispose of at my death, unto my children in equal shares; but in case either or any of them shall have died in my lifetime leaving issue living at my death, such issue shall take by representation and per stirpes between them the share which his or her parent would have taken had such parent survived me."

"2. That the children of the decedent living on July 5, 1946, the date of the execution of the will, and also at the time of decedent's death, were Richard Simon-

son, Oscar Simonson, Elsie A. Oxley, and Jennie Zender."

"3. That decedent also had a son, Ernest Simonson, who died on April 1, 1934, prior to the date of death of decedent, and prior to the date of execution of decedent's will on July 5, 1946. The said Ernest Simonson left to survive him two children, Ernest L. Simonson and Barry Simonson, and these grandchildren of decedent were living at the time of the execution of decedent's will on July 5, 1946, and at the time of decedent's death on January 26, 1959."

"4. That there had been no contact, intercourse, or association between the decedent and his said grandchildren, Ernest L. Simonson and Barry Simonson, since the death of his son, Ernest Simonson, in 1934, and the date of the execution of decedent's will on July 5, 1946, or from that time to decedent's death on January 26, 1959."

"This stipulation and agreement entered into this 14th day of March 1960."

The question before the court is a narrow one. May the grandchildren of decedent, children of a deceased son who had died some 12 years before the date of decedent's will, take the share of their deceased father by representation and per stirpes?

The construction placed upon paragraph second of the will must of course be the result of the consideration of the entire will, together with the factual situation as it confronted testator at the time of execution. Of one thing we are certain, few wills have a twin brother; so it is little comfort to compare wills having similar, or nearly similar, wording. Where the wording is the same, the context is dissimilar. Where both are alike, the factual situation is at odds. Hence, the oft-repeated assertion that few wills have a twin brother.

Testator's intent must be ascertained by a consideration of the entire will, and his intent is the pole star in construing the will: Mulert Estate, 360 Pa. 356, 61 A. 2d 841; Prime's Petition, 335 Pa. 218, 6 A. 2d 530. The will must be read in the light of circumstances surrounding testator when he executed his will: March Estate, 357 Pa. 216, 53 A. 2d 606; Packer's Estate (No. 1), 246 Pa. 97, 92 Atl. 65.

Attendant circumstances include the condition and size of his family, the natural objects of his bounty and the character and extent of his property and possessions: Fahey Estate, 360 Pa. 497, 61 A. 2d 880; Mayer's Estate, 289 Pa. 407, 137 Atl. 627.

Counsel for the estate holds that the will is ambiguous, and we must therefore be aided by technical rules of construction. The trustee ad litem urges that the intent of testator is clear and there is no necessity for application of such rules.

It is of course well settled that only when the intention of testator, gathered from the four corners of the will, is not entirely clear, may we resort to pertinent technical rules of construction in order to aid in the ascertainment of testator's intent: Weir's Estate, 307 Pa. 461, 161 Atl. 730; Wood's Estate, 321 Pa. 497, 184 Atl. 13.

In Britt Estate, 369 Pa. 450, 87 A. 2d 243, the court said:

"In determining the testator's intention—if no uncertainty or ambiguity exists—his meaning must be ascertained from the language of his will; it is not what the Court thinks he might or would have said in the existing circumstances, or even what the Court thinks he meant to say, *but what is the meaning of his words:* (Citing cases) . . . it is only where a testator's intent is uncertain or the language ambiguous that such canons should be resorted to."

To the same effect is Laughlin Estate, 157 Pa. Superior Ct. 155, 42 A. 2d 173, wherein the court said:

"Presumptions are applied, and resort is had to rules of construction in determining the disposal of property, only where the language of a testator is not clear, and there is ambiguity in the meaning of his words. (Citing cases) Technical rules of construction must give way to the plainly expressed intention of a testator . . . Such intention, once determined, will be effectuated unless in contravention of some established rule of law or public policy."

In the instant case, there is undoubtedly a class gift to the children of testator. We are concerned with the children of a member of that class who died before testator wrote his will. The Wills Act of April 24, 1947, P. L. 89, sec. 14 (8), provides that a bequest or devise to children, whether designated by name or as a class, shall not lapse if the beneficiary shall fail to survive testator, but shall leave issue surviving testator. There were similar anti-lapse provisions in the prior Wills Act of June 7, 1917, P. L. 403, sec. 15(a), and also in other Wills Acts dating back to the Act of April 18, 1833, P. L. 249.

It must be remembered, however, that said section 14 of the Wills Act is not substantive law but constitutes a set of rules of interpretation, to be used in construing wills.

The act states: "Section 14—Rules of interpretation.

"In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:—

"(8) Lapsed and void devises and legacies; Substitution of issue. A devise or bequest to a child or other issue of the testator or to his brother or sister or to a child of his brother or sister whether designated by name or as one of a class shall not lapse if the bene-

ficiary shall fail to survive the testator and shall leave issue surviving the testator but shall pass to such surviving issue who shall take per stirpes the share which their deceased ancestor would have taken had he survived the testator."

In further aid of these rules of construction we have the comments of the Joint State Government Commission of the General Assembly which prepared the Wills Act of 1947, together with related acts in the field of decedents' estates laws. The "Commission", as it is popularly referred to, comments on clause (8), sec. 14, and states, in part: "Gifts to named individuals within the favored group, who were dead when the will was written, subject to the rights of testator's spouse or issue will remain available for their issue (Spencer's Estate, 37 Pa. Super. Ct. 67), but when the gift is to a class, issue will not take the ancestor's share *unless the ancestor was living when the will was written* or was born thereafter prior to the testator's death: See Harrison's Est., 51 A. 976, 202 Pa. 331, 334." (Italics supplied).

Estate counsel holds that under this long established principle of construction there can be no question but that testator's deceased son was not a member of the class when the will was written, and therefore his children who survived testator cannot take unless there is some provision in testator's will to indicate that he intended otherwise. Counsel finds none.

He relies heavily on the marked similarity between this will and that in McCarty's Estate, 138 Pa. Superior Ct. 415, wherein testator bequeathed legacies to both grandson and granddaughter, children of a son who had been deceased some 18 years prior to execution of the will, and in the residuary clause, provided:

"All the rest, residue and remainder of my estate . . ., I give and bequeath to my children in equal

shares absolutely, the child or children of any deceased child to take its parent's share."

At that time there were five children of testator living, and the two grandchildren, above referred to. All survived testator. The question was whether the grandchildren were entitled to their parent's share of the residuary estate. The court held that they were not. Their father "was never a member of the class constituting the primary legatees." The adherents of the Christopherson rule of construction thusly claimed another victory.

That rule is named after the English case of Christopherson v. Naylor, 1 Mer. 321, 35 Eng. Rep. 693 (Ch. 1816), which declared that where there is a gift to a class, the interest of the representative of a deceased member thereof, being substitutionary, cannot rise higher than the interest of his ancestor, and that therefore the representative cannot take if the ancestor had died before the will was executed, since it would be presumed that testator did not intend to benefit one who was already deceased.

A close analysis of McCarty's Estate, supra, will disclose that there were many considerations other than said rule which dictated the final result. The court felt the real problem to be as follows:

"The question is whether appellants, children of a deceased member of the class who died prior to the making of the will, are entitled to take the share which their parent would have taken if living at the date of the will, by virtue of the provision for the children of a deceased child to take their parent's share. *The answer depends upon whether such provision constitutes a substitutional, or an original and substantive, gift.*" (Italics supplied).

The court therein considered that testator had in mind two groups of beneficiaries, his grandchildren

and his children. He specifically provided for his grandchildren by making substantial bequests to them, and then, "under the impression that his wishes in that respect had been accomplished, testator passed on to distribute what remained of his estate to the other group, his children."

It is at once apparent, then, why the court construed this language to bestow other than an original and substantive gift. Had the court permitted the grandchildren to take their legacies and also to share in the residue, the distribution would have been grossly inequitable toward testator's children, with the result that the grandchildren would share more than double the sum that each of testator's children would receive. Testator could hardly have desired such a result. Can the court, then, be said to have decided this case primarily on the basis of the Christopherson rule? Our answer would be in the negative.

In addition to the McCarty case, estate counsel relies on the following: Wood's Estate, 321 Pa. 497, 500; Worstall's Estate, 125 Pa. Superior Ct. 133; Harrison's Estate, 202 Pa. 331, 335; and Weber Estate, 155 Pa. Superior Ct. 403 (1944). In the latter the court said, page 406:

"If we assume the provisions of the will are uncertain and ambiguous then we must resort to the artificial rules of construction. They support the conclusion that only those who come within the class mentioned were in the contemplation of the testator."

The provisions of the will must first be "uncertain and ambiguous" before the artificial rules of construction are applied. The holding of the Weber case was considerably weakened when, only six years later, the same court rendered its decision in Lentz Estate, 167 Pa. Superior Ct. 377 (1950), in which testatrix had brothers and sisters, and in addition one sister who

was deceased *at the time the will was written*. The deceased sister's son was permitted to take her share. The court cited with approval: Fahey Estate, 360 Pa. 497; Mayhew's Estate, 307 Pa. 84; Minter's Appeal, 40 Pa. 111, and stated that the principle had been approved therein and in "numerous others, beginning with Sorver v. Berndt, 10 Pa. 213."

In support thereof we can also cite the following: Thomas Estate, 88 D. & C. 80; Long v. Labor, 8 Pa. 229; Golden's Estate, 320 Pa. 4; Hoff's Estate, 32 Montg. 153; Ladd's Estate, 33 Montg. 62; Park's Estate, 4 Pa. C. C. 560; Burk's Estate, 21 Dist. R. 357; Martin's Estate, 31 York 106; Pickering Estate, 16 D. & C. 2d 319.

The principle is stated in 69 C. J. §1367, as follows:

"Thus, if the gift is to the members of a class 'then living, or their issue,' it is construed to mean 'those then living and the issue of those then dead,' thereby including the issue of those dead at the date of the will, since such issue take original shares. So also, where there is a gift to the children of A and then a gift to the issue of any child who may be dead, of the share which the parent would have taken if living, this is really a gift to the issue of the share which the parent of the issue would have taken if living at the death of the testator, and may include the issue of a parent dead at the date of the will, under the principle just stated."

The Christopherson rule is easy to state, but difficult to apply. The case is indeed rare where the language of testator is unencumbered, plain, simple and absolute. Many cases have been cited as examples of the application of the rule, where in truth the case could have been, and often was, decided entirely or at least partially because of other considerations.

More and more exceptions to the rule are continually being stated, until eventually it may disappear as

a recognized rule of construction of wills in this Commonwealth.

Certainly the rule is not absolute. It might bear serious reexamination in the light of more recent comment by astute practitioners and recognized experts in the field of decedents' estates laws. Perhaps, after such reappraisal, it may follow the example of still another antiquated rule of construction which recently underwent major surgery. I refer to the recent abrupt change in a rule which applies to the determination of vested and contingent remainders.

Witness the drastic revision and final demise (unlamented) of that famous (some would say "infamous") rule of construction known as the "pay and divide" rule. It dates back at least to Moore v. Smith, 9 Watts 403 (1840), where Chief Justice Gibson said "the rule is now established beyond controversy". Although it was reiterated literally hundreds of times by our courts, the fabric of its structure was so weakened by incessant and ever-expanding exceptions that eventually nothing remained but a hollow core of doubtful logic which could not stand the searching light of true reasoning, stripped of all its pompous phrases and accoutrements.

Blow after blow was struck at the very foundation of the rule, but no court had the temerity to castigate it. Most realized that for all practical purposes the rule was dead, but no one saw fit to bury it. A near-mortal blow was struck when our highest appellate court said, in Newlin Estate, 367 Pa. 527, 536 (1951) : "These cases illustrate how difficult, if not impossible, it is to harmonize or reconcile the myriad will cases which fall on one or the other side of the vested-contingent line, and especially is this so in the so-called pay and divide cases which create so many technical and perplexing problems."

That truly ended the effective applicability of the rule. But it lingered on. Finally, mustering up the courage and unanimity that seemed to be lacking on prior occasions, the court said its last obsequies and laid the rule to rest with almost astounding finality, when Mr. Justice Bell, in Dickson Estate, 396 Pa. 371, 374 (1959), speaking for a unanimous court, and undoubtedly with much relish and satisfaction said:

"The executor . . . seeks to establish an intestacy in . . . his father's trust by applying the so-called 'Pay and Divide' Rule. Whatever may have been the justification for the origin of this judicially created technical Rule, it has vanished, leaving in its wake a welter of conflict and confusion. See: Newlin Estate, 367 Pa. 527, 536, 80 A. 2d 819; Richenbach Estate, 348 Pa. 121, 125, 34 A. 2d 527; Hood's Estate, 323 Pa. 253, 259, 186 A. 740; Alburger's Estate (No. 2), 274 Pa. 15, 18, 117 A. 452. *Moved by the experience of the past and a desire to eliminate confusion for the future*, the 'Pay and Divide' Rule is henceforth to be taken as abolished." (Italics supplied).

Thus we see that the law is not static. Its dynamic quality is a living, moving force. It does not attempt to interpret the whim of the moment, but neither does it cling tenaciously to dogma long since dead. It cannot remain stagnant, yet it must protect its own integrity. Reinterpretation of familiar principles may oftime produce seeming paradoxes in the law. Yet they can be, and are, resolved with lasting benefits to the whole body of the law.

Is the Christopherson rule still the law in Pennsylvania? Or has it been laid low, merely awaiting the courtesy of the final rites? We are not constrained to answer these questions. The scrivener of our will has so phrased the document as to make it unnecessary to resort to technical rules of construction: Britt Estate, supra. Where the intention of testator is clear, such

rules of construction must give way to the well expressed purpose thusly determinable from the entire will: Laughlin Estate, supra.

Nowhere in the Simonson will do we find any intent to exclude any of his issue. Nowhere is there any indication of a desire for any but a stirpital distribution. Had testator intended to disinherit his two grandchildren, his careful scrivener could readily have done so. In construing a will, the presumption is always against disinheritance of an heir except by clear and plain language: Grothe's Estate, 229 Pa. 186, 190, 78 Atl. 88; Murray's Estate, 313 Pa. 359, 362, 169 Atl. 103; McKean Estate, 159 Pa. Superior Ct. 409, 48 A. 2d 74.

The plan of testator is discernable throughout. He desired an equal distribution to each of the five lines of sons and daughters. Only by providing a per stirpes legacy to grandchildren could this be effected. Nothing was done to vary this equal distribution. He made no bequests or devises of any kind, disposing of his entire net estate in the residuary clause. The whole will tends toward an equal distribution to all lines, and a recognition of all his issue.

In Lentz Estate, supra, the Superior Court approved the result reached by the court below, and quoted with approval from its opinion:

" 'When the will was written the testatrix knew that she had living brothers and sisters. She knew that one sister was then dead survived by a son . . . She knew that through the intervening years, at least some of her brothers and sisters might die, with or without issue. She provided for this contingency by making an equal distribution among brothers and sisters, and by providing that the issue of a deceased brother or sister should take the share of *such* deceased. The word "issue" is significant. It restricts the gift to the line of each individual brother and sister. In other words,

the children or grandchildren of a particular brother or sister are not the issue of another brother or sister, and consequently may not take the share of such other. Their right to any gift is circumscribed by the word "such" and by the word "issue". The word "such" refers to the particular brother or sister who may be dead at the time of distribution. This is expressed in the will by the phrase "such as then may be dead". The share of such a one is given to the issue of that one, or as the will puts it, "to the issue of such as then may be dead". We think this very clearly expresses an intent to treat brothers and sisters equally by making a per capita gift to them, and by giving the share of any deceased brother or sister to his or her issue.' "

Substituting "children" for "brothers and sisters", we have almost the exact situation as the case at bar. Where testatrix in Lentz has said "or to the issue of such as then may be dead" ours has said, to the same effect, "but in case either or any of them shall have died in my lifetime leaving issue living at my death . . .", which phrasing is more technically correct and appropriate, particularly when followed by directions for a per stirpes distribution. The instant case is a stronger one for another reason. Testator used the words "shall have died", the future perfect tense which is grammatically correct, rather than the mere future tense "shall die". Was it not because he knew that one of his children was already deceased and he desired to include him in the class?

Certainly this is not a forced or strained construction. We cannot attribute the intention to this scrivener of writing meaningless words in a technically correct will, when a proper construction gives such words intelligent and cogent meaning. Effect must be given to each word, as used. Now let us consider the words "either or any of them" which preceded the phrase "shall have died." Why did this careful scrive-

ner use the word "either" in the juxtaposition which we find it? Would it have been sufficient to have said "in case *any of them* shall have died" instead of "*either or any*"? The singular "either" was surely used to denote that testator knew that one son was already dead, and the word "any" was used to provide for the eventuality of others dying prior to his decease. Thus, "in case either [one of them] or any [more than one] of them shall have died in my lifetime leaving issue living at my death, such issue shall take by representation and per stirpes between them the share which his or her parent would have taken had such parent survived me."

We find that by interpolating the plainly understood singular and plural, the meaning is precise, correct and individuated.

Testator made it abundantly clear that he desired all his blood lines to be equally benefited. The court must give effect to his expressed command. The grandchildren, Ernest L. Simonson and Barry Simonson, shall take the share which their parent would have taken had he survived testator.