## O'Donnell's Estate.

*Wills—Construction—Gift to class—"Children then living"—Contingent remainder—Necessity for security.*

Testator devised his residuary estate to his wife "so long as she shall live and remain my widow, and at her death to be equally divided among my children that are then living. If in the good judgment of my widow she shall think it best to marry, then I will that she shall become the sole owner of one-third of my estate, the balance to be divided equally among the children that are living at the date of her marriage." When the will was executed testator had four children, but he was survived only by his widow and one child, and two children of a deceased child. The widow and the surviving child petitioned for distribution of the residuary estate to the widow without security. The lower court refused the prayer of the petition. *Held*, the gifts over to testator's children were contingent on their surviving the marriage or death of the widow, and the lower court properly required security for the protection of persons in whom title might vest.

Argued Oct. 19, 1915.   Appeals, Nos. 204 and 219, Oct. T., 1915, by Sarah Hernon and Sarah O'Donnell, from decree of O. C. Allegheny Co., March T., 1912, No. 95, dismissing exceptions to decree of distribution in Estate of Charles O'Donnell, deceased.   Before MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ.   Affirmed.

Exceptions to decree of distribution in Estate of Charles O'Donnell, deceased.

The facts appear in the following opinion by OVER, P. J.:

Charles O'Donnell died testate January 3, 1911, making the following disposition of his residuary estate:

"I give, devise and bequeath to my beloved wife, Sarah O'Donnell, in lieu of her dower if she should so elect, all the rest, residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever the same shall be, so long as she shall live and remain my widow,

and at her death to be equally divided among my children that are then living.

If in the good judgment of my wife she shall think it best to marry, then I will that she shall become the sole owner of one-third of my estate, the balance to be divided equally among the children that are living at the date of her marriage."

When the will was executed he had four children, but only one child, Sarah A. Hernon survived him and two grandchildren, Hilda and Armadilla O'Donnell, minor children of Charles O'Donnell, a deceased son of the testator. His wife survived him, has not remarried, and the only child, Mrs. Hernon, who claimed that she and the widow are the only persons interested in the estate, by writing, filed requests that the fund here for distribution should be distributed to the widow without requiring security. The guardian of the minor children objects to this being done, alleging that they have a vested interest in the residue, being included in the word "children," and if not, that the interest of Mrs. Hernon is liable to be defeated by her death before the widow's marriage or death, that there would then be intestacy and the estate vest in the grandchildren, if they survived, as next of kin.

In Hallowell v. Phipps; 2 Whart. 376, 380, Mr. Justice Rogers said, that

"Under a bequest to children, grandchildren and other remote issue are excluded, unless it be the apparent intention of the testator, disclosed by his will, to provide for the children of a deceased child......The word "children" does not ordinarily and properly speaking comprehend grandchildren or issue generally. Their being included in that term is only permitted in two cases, viz: From necessity which occurs when the will would remain inoperative unless the sense of the word "children" were extended beyond its natural import, and where the testator has clearly shown by the other words

that he did not intend to use the term "children" in the proper actual meaning, but in a more extensive sense."

This rule has been followed in Hunt's Est., 133 Pa. 260; Long's Est., 228 Pa. 594-603, and other cases. These grandchildren then are excluded unless this case is within one or both of the exceptions to the rule. The first exception is "When the will would remain inoperative unless the sense of the word 'children' were extended beyond its natural import," and if the gift to children is contingent upon them being living at the remarriage or death of the widow, should Mrs. Hernon die before either event and the grandchildren be excluded, there would be intestacy, the will would remain inoperative, and perhaps this case would be within the first exception. It is not necessary, however, to decide this question now, for if the gift to the children be contingent, security must be required of the widow to protect the interest of the persons whom title to the fund would vest at her marriage or death.

It may be that under the "artificial canon of construction" formerly applied, that the period of survivorship would be held to be the death of the testator; but in Mulliken v. Earnshaw, 209 Pa. 226, 230, this rule was not followed. There the testator after he devised to his widow for life, directed as follows:

"And from and immediately after her death or marriage, I give and devise my said real estate unto my children then living, and the issue of any that may be deceased, in equal parts and shares absolutely and in fee simple, the issue of any deceased child to take only the deceased parent's share."

And it was held that the remainders to the children were contingent.

In discussing the question, Mr. Chief Justice MITCHELL said (p. 229) :

"The want of harmony in the cases dealing with the period to which the words "then living" or similar phrases in a will should be applied, arises mainly from

O'DONNELL'S ESTATE.

the artificial canon of construction, that the period intended is presumed to be the death of the testator. The canon itself grew out of the preference in the policy of the law in all doubtful cases for vested rather than contingent interests. Like all artificial rules it had the constant tendency to become an arbitrary fetter instead of a mere instrument for the ascertainment of the testator's interest. The policy of the latter cases in this State, if not everywhere, is to get back to the true rule of looking only to the actual intent. There is no sound reason in the nature of things why the actual meaning of the person using the words should not be sought in the case of a will exactly as it is in the case of a contract."

Here by the terms of the will the gift over at the widow's death is to "the children that are then living," and the adverb then certainly refers to the widow's death. The gift over of two-thirds of the estate if she marries is to "the children that are living at the date of her marriage," the period of survivorship being thus clearly fixed. There seems to be no room for doubt that the testator did not intend that the word "living" should refer to his death, but to the death or marriage of his widow. Then as the interest of Mrs. Hernon in the estate is liable to be defeated by her death before the marriage or death of the widow, and the widow has but a life estate and a conditional absolute estate in one-third, security must be required in distribution to her, or a trustee appointed to hold the fund during her life or widowhood.

The decree of the lower court directed payment of the residue to the widow of decedent upon the entry of security conditioned to pay upon her marriage or decease the amount due to the persons entitled thereto. Sarah O'Donnell and Sarah Hernon appealed.

*Error assigned,* among others, was the decree of the court.

*Thomas L. Kane,* for appellants.

*William J. Barton,* with him *Joseph B. Hetherington,* for appellees.

PER CURIAM, January 3, 1916:
The decree is affirmed on the opinion of the learned president judge of the Orphans' Court.

---

## Read *v.* Ely, Appellant.

*Contracts—Brokers—Commissions—Sale of stocks and bonds— Case for jury.*

1. When a broker seeks to recover a commission, it is incumbent upon him to prove either that a sale was made to the party whom he produced or that the purchaser was able and willing to buy, and the failure to make an actual sale was through no fault of the broker or his customer. If his introduction of the parties results in the sale, he has earned his commission; but even though he may not have brought the parties together in the first instance, he is entitled to a commission if he was the efficient cause of pending negotiations being brought to a successful issue.

2. In an action to recover commissions for the sale of the stock and bonds of an electric company, the case is for the jury and a verdict and judgment for the plaintiff will be sustained where it appears from plaintiff's evidence that he was employed as a broker to effect a sale of the stock and bonds in question; that plaintiff with defendant's consent shared his agency with another, who brought the matter to the attention of an officer of the purchaser, who in turn communicated the proposition to his superior officer, who sent a representative to the defendant with whom the sale was arranged and consummated; that the entire transaction covered a period of less than three months, and that during such period plaintiff personally saw a director of the purchaser and learned from him that the sale could be effected if a satisfactory price could be arranged, and that plaintiff so advised defendant, who directed plaintiff to suspend his efforts for the time being and finally completed the sale without plaintiff's further aid.

Argued Oct. 19, 1915.    Appeal, No. 222, Oct. T., 1915,
VOL. CCLII—4