## Worstall's Estate

Argued November 16, 1936.

134

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Robert E. Erwin,* for appellant.

*C. Brewster Rhoads,* with him *Isaac J. Vanartsdalen,* and *Montgomery & McCracken,* for appellees.

OPINION BY STADTFELD, J., January 29, 1937:

The testator died February 15, 1934. This appeal relates solely to the distribution of residuary estate, which the testator, by his will, disposed of as follows: "Item. I direct that the residue of my estate after all debts and expenses are paid, including the above bequests, be divided between my nieces and nephews, children of Lewis Worstall, namely, S. C. Worstall, Warner Worstall and Owen W. Worstall, share and share alike." This clause is obscurely expressed, because Lewis Worstall, named therein, did not have children by the names designated, but the testator had four brothers by these names, viz: Lewis Worstall, S. C. Worstall, Warner Worstall and Owen W. Worstall. Hence the court corrected the language to read "divided between my nieces and nephews, children of Lewis Worstall, S. C. Worstall, Warner Worstall and Owen W. Worstall, share and share alike." This reading of the will is conceded

to be correct, subject, of course, to the question raised by this appeal as to the meaning of the word "children." This construction is fully sustained under the opinion of the lower court from which we quote as follows: "Although it is the duty of the Courts to construe Wills as they find them and not to make them, nevertheless, it is a well established principle of constructions that in wills obscurely expressed, the Court may transpose, supply, or reject words or sentences where warranted by the immediate context or the general scheme of the will, so as to bring out the natural sense and the testator's obvious meaning. 28 R. C. L. 225, par. 187; 2 Schuyler on Wills, 6th Ed. 995, par. 873; *Bender v. Bender*, 226 Pa. 607, 613; *Biles v. Biles*, 281 Pa. 565, 571. Furthermore, where a latent ambiguity arises as to the identity of a legatee or devisee from the fact that the name or description of no claimant exactly corresponds to that given in the will, under such circumstances extrinsic evidence is admissible to explain the ambiguity or inaccuracy, and to enable the court to identify the person intended. 69 C. J. pp. 152 and 161; 94 A. L. R. (Note 2); *Morris' Estate*, 76 Super. Ct. 50, 53."

The will of the testator was executed February 26, 1929, at which time all four brothers named in the will were deceased.

Lewis Worstall left two children, both of whom are living, to-wit, Mary W. Barrett and Samuel Worstall.

Seth C. Worstall died prior to 1908, leaving four children, all of whom died before the date of the testator's will. Three of these left children to survive them, viz: (1) Ida Shaddinger, died May 16, 1926, leaving two children, Hilda K. Elliott and Charles A. Shaddinger; (2) Florence Wiley, died March 7, 1925, leaving two children, Lily Van Horn and Mary Puff; and (3) William Worstall, died May 15, 1917, leaving four children, George Worstall, Harry Worstall, Helen Worstall

and Carrie Slack (the last named of whom has since died, leaving a daughter).

Warner Worstall died before the testator and left six children, Edward Worstall, Ella W. Keller, Lizzie Shelly, Harry Worstall, Hattie Mitch and John S. Worstall, of whom Hattie Mitch died since the death of the testator and Frank Mitch is her administrator, and John S. Worstall died February 16, 1929, leaving two children, Russell Worstall and Samuel Worstall.

Owen W. Worstall died about 1914, leaving two children, George Worstall, who is living and Alfred Worstall, who is an absentee.

Thus, is appears that three of testator's brothers, Lewis, Warner and Owen, had children living at the date of the will.

Seth, the fourth brother, had no children then living, but eight grandchildren, the children of three deceased children.

The auditor and the court below excluded these eight grandchildren whose parents died before the execution of the will, and held they were not entitled to participate in the distribution of the estate, on the ground that the gift of the residue was to a class, and that Section 15 (b) of the Wills Act of June 7, 1917, P. L. 403, 20 PS 252, substituting the issue of a deceased legatee does not apply unless such deceased legatee was a member of the class some time between the execution of the will and the death of the testator.

Hilda K. Elliott, the appellant, is one of these eight grandchildren and contends that from necessity "children" must be construed "grandchildren," as otherwise no effect would be given to testator's gift to the "children of Seth G. Worstall."

Section 15 (b) of the Wills Act of June 7, 1917, P. L. 403, 20 P S 252, provides as follows: "Where any testator shall not leave any lineal descendants who would receive the benefit of any lapsed or void devise or legacy,

no devise or legacy made in favor of a brother or sister, or of brothers or sisters, of such testator, or in favor of the children of a brother or sister of such testator, whether such brothers or sisters, or children of brothers or sisters, be designated by name or as a class, shall be deemed or held to lapse or become void by reason of the deceased of such devisee or legatee in the lifetime of the testator, if such devisee or legatee shall leave issue surviving the testator; but such devise or legacy shall be good and available in favor of such surviving issue, with like effect as if such devisee or legatee had survived the testator, unless the testator shall in the will direct otherwise." The foregoing section of the Wills Act of 1917, is but a re-enactment of Section 2 of the Act of May 6, 1844, P. L. 564, as amended by the Act of July 12, 1897, P. L. 256, and does not change the law as determined under these prior acts.

The bequest that the residue be divided between testator's "nieces and nephews," children of his four named brothers, "share and share alike" is apparently a gift to a class. The gift is of an aggregate sum to a body of persons, uncertain at the time of the gift, to be ascertained at a future time. All of the members of the class are to take in equal shares or definite proportions, the shares of each being dependent as to amount upon the ultimate number of persons in the class.

It is a well recognized principle of construction that to prevent the lapsing of a legacy, where the gift is to a class, the legatee must have been living when the will was made, or some time thereafter before the testator's death. As the gift in this case was to a class, only those nephews and nieces of the testator, who were members of the class, some time between the date of the will and the death of the testator, or their children in case of their death, were entitled to share in the residuary estate.

The intent of the testator was to limit the gift of his

residuary estate to his nieces and nephews, children of four designated brothers.

In *Harrison's Est.*, 202 Pa. 331, 51 A. 976, the Supreme Court, in construing the Act of 1897, adopting the opinion by Judge PORTER, in the same case reported in 18 Pa. Superior Ct. 588, says at pp. 334, 335 : "This legislation is not and was not intended to have any bearing upon the interpretation of wills; its effect is confined to the manner in which the intention of the testatrix, as ascertained from the words of the will, shall be carried into execution. Whether the person within the class designated by the act, who has died during the lifetime of the testator, was a legatee or devisee within the intention of the testator must first be ascertained from the language which he used in disposing of his property. When the devise is to a person by name it is conclusive as to the intention of the testator that that person should take, and the intention of the testator being established, the subject of the devise or bequest will, upon the death of the testator, be good and available in favor of the issue, when the primary devisee or legatee has died during the lifetime of the testator. ...... A bequest to a number of persons, not named but answering a general description is a gift to them as a class; this rule of construction is intended to settle the testator's intention, unless the will itself shows that he intended otherwise. *Denlinger's Estate*, 170 Pa. 104 ...... The effect of the act of 1897, is to provide that where one is within a class designated by the testator as the object of his bounty, the devise or legacy to him shall not lapse by his death during the lifetime of the testator, but the person so dying must have been a member of the class at some time in the period during which the will remained ambulatory, between the execution of the will and the death of the testator."

To same effect is *Todd's Estate*, 33 Pa. Superior Ct.

117, (1907) where the remainder was devised to be divided equally between nephews and nieces; and *Hilton's Estate,* 44 Lanc. Law Review 312 (1934) where the residue was devised to be divided equally between the children of testator's two brothers and sister, giving to each of the nieces and nephews, share and share alike. Likewise in *Tyson's Estate,* 47 Pa. Superior Ct. 108.

We quote from the opinion by Mr. Justice DREW, in the recent case of *Wood's Estate,* 321 Pa. 497, 184 A. 13, at p. 500: "A bequest to a number of persons not named, but answering a general description, is a gift to them as a class, where a contrary intention does not appear from the will: *Denlinger's Est.,* 170 Pa. 104; *Harrison's Est.,* 202 Pa. 331, 335; *Brundage's Est.,* 36 Pa. Superior Ct. 211; *Herman's Est.,* 90 Pa. Superior Ct. 512, 516. Whether or not the gift is to a class of course depends on the testator's intention, which, when it does not sufficiently appear in the Will itself, must be settled by rules of construction. Where the gift is 'of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or other definite proportions, the share of each being dependent for its amount upon the ultimate number,' the gift is to a class: see *Billings' Est.* (No. 1), 268 Pa. 67, 70."

Appellant seeks to have the word "children" construed to include grandchildren. This contention, as applied to the instant case, however, involves the further contention that not only did the testator mean "grandchildren" when he only used the word "children," but that he intended the words "nieces and nephews" as used by him to include grandnieces and grandnephews. Such an argument is contrary to the well-established rule of construction that "children" does not include "grandchildren," unless there is something in the will clearly indicating such to have been

the testator's intention. The rule that the word "children" excludes grandchildren and remote issue is announced in 69 Corpus Juris (Wills), pp. 173-177, as follows: "1199 (b) Primary and Popular Meaning. It has been said that 'children,' as used in a will in designating the beneficiaries, must be understood in its primary sense, when that can be done, and always when there are any persons in existence at the date of the will, or before the devise or bequest takes effect, answering such meaning of the term. Both in its primary or ordinary legal meaning, and in its ordinary popular meaning, 'children,' as used to designate beneficiaries, means immediate, or first generation of, legitimate offspring of the first degree. Whether this meaning will be given the words, as used in a will to designate beneficiaries, depends upon the intention of the testator as indicated by the context in which it occurs or by the language of the entire will, but in the absence of something in the will, construed as a whole, in the light of the subject matter and the situation with which the testator is dealing, disclosing a different intent, the word will be given this meaning. In this sense, it does not include more remote descendants, in the absence of an indication of the testator's contrary intent, or unless otherwise the provision would be inoperative." See in support of this statement in Corpus Juris, the following cases: *Puterbaugh's Est.,* 261 Pa. 235 (1918), 104 A. 601; *Scull's Est.,* 249 Pa. 52 (1915), 94 A. 474; *O'Donnell's Est.,* 252 Pa. 45 (1916), 97 A. 182; *Long's Est.,* 228 Pa. 594 (1910), 77 A. 924; *Hunt's Est.,* 133 Pa. 260 (1890), 19 A. 548; *Castner's Appeal,* 88 Pa. 478 (1879); *Horwitz v. Norris,* 49 Pa. 213 (1865); *Hallowell v. Phipps,* 2 Whart. 376 (1837).

Testator's knowledge of death of potential members of a class will not be presumed.

We quote from Jarman on Wills (7th Ed. 1930), p. 1631: "In such cases as those under discussion it seems

to be essential that the state of the family should be known to the testator and that his knowledge of it should be proved, it cannot be presumed." See also *Crook v. Whitley,* 7 DeG. M. & G. 490, 496; *Radcliffe v. Buckley,* 10 Ves. Jun. 195.

The words "nieces," "nephews" and "children" are not employed in testator's will either singly or in any other combination, other than in the one instance in the residuary clause; hence there is nothing from the context of the will to imply an intent on the part of the testator to include persons other than nieces and nephews as legatees under the class gift of his residuary estate.

No construction by reason of necessity or to prevent the will becoming inoperative can be urged in the present case. At the time the testator made his will and at his death, there were nine persons, nieces and nephews, children of three of the four brothers named, who fitted the description of the class to which the residuary estate was bequeathed. Hence it cannot be suggested that the residuary clause will become inoperative unless the construction urged by the appellant is adopted by this court.

Appellant's construction of the residuary clause would further involve the conclusion that the testator intended "children" to mean "grandchildren" of one of his brothers, but not of all his brothers; that the word meant "children" in its usual or popular sense if there were children living at the time of the execution of the will, but if the children of any brother were then dead, then the term should mean "grandchildren." It also involves the conclusion that when the testator used the words "nieces and nephews" he meant those words in their popular sense as to certain brothers and "grand-nieces and grandnephews" as to one of his other brothers. Such construction of necessity involves the finding that the testator used the same words with dif-

ferent meaning in the only paragraph of his will in which he referred either to "children" or to "nieces and nephews." No such strained construction is warranted when the intent of the testator to make a gift to a class is so apparent and where the class to take is so adequately designated and actually exists.

The same conclusion has been reached in the English cases: *Radcliffe v. Buckley*, 10 Ves. Jun. 194, 32 Eng. Reprint 819 (1804) ; *Re Kirk*, 52 L. T. Rep. 346 (1885) ; 3 Jarman on Wills, (7th Ed. 1930) p. 1630.

The obvious intent of the testator was to divide his residuary estate equally on a per capita basis among designated members of a class. If the contention of the appellant should prevail, the residuary estate of necessity must be distributed per capita among nieces and nephews of three of testator's brothers and upon a per stirpes basis as to testator's remaining brother, S. C. Worstall, none of whose children were living at the time of the execution of the will. There is nothing in the residuary clause to justify the conclusion that the testator intended a specific gift of one-quarter of his residuary estate to the children of S. C. Worstall on a per stirpes basis, and a division of the remaining three-quarters on a per capita basis to and among the children of his remaining brothers. This construction would do violence to the well established rule that, in the absence of other language disclosing an intention to distribute stirpitally, the words "equally to be divided," "divided into equal parts" and the like, ordinarily favor a distribution per capita rather than per stirpes. *Davis's Est.*, 319 Pa. 215 (1935), 179 A. 73; *Garnier v. Garnier*, 265 Pa. 175 (1919), 108 A. 595; *Bender's Appeal*, 3 Grant 210 (1856).

The cases cited on behalf of appellant are readily distinguishable from the instant case. They were either gifts of a specific share of decedent's estate and would have failed had not the issue of the person to whom the

share had been given been allowed to participate in the distribution, or where the testator has clearly shown by other words that he does not use the word "children" in the proper sense, but means it in a more extensive signification.

In the instant case, specific shares were not given by the testator to the family of each of his four brothers, but the gift is of an aggregate sum to a designated class. As stated by the lower court: "In view of what has been said by the Courts in construing the Wills Acts of 1897 and 1917, supra, and the undisputed fact that the testator's nieces and nephews through whom the exceptants claim to share in said residue had died before the date of his will, they were never members of the class in whom the gift of the residuary estate vested, and consequently, there is nothing which their children, the exceptants, are entitled to take by substitution."

We agree with the conclusion reached by the lower court. The assignments of error are overruled and decree affirmed. Costs to be paid out of the fund for distribution.