## Horne Estate

*I. J.* and *D. W. Vanartsdalen,* for estate.

*William J. Begley,* for auditor.

*J. Franklin Hartzel,* for exceptants.

*Harriet M. Mims,* for guardian ad litem.

SATTERTHWAITE, J., July 6, 1956.—The within case involves two problems: First, the determination of the import of certain language in testatrix' will; and, secondly, the effect of the common law rule against perpetuities when applied to the testamentary provisions as so construed.

Testatrix died May 23, 1930, leaving a will dated May 7, 1930, whereby she set up certain trusts of particular parcels of real estate as well as of her residuary estate. The language of all of these provisions, for purposes of this decision, was substantially the same. By the second paragraph of her will, she devised two houses and lots in Newtown to her husband, Benjamin W. Horne, and her mother, Elmira H. Atkinson, to live thereon or derive the income therefrom, with a further provision that the properties might be sold and the proceeds invested by a named corporate trustee, "the income to be paid my Husband and Mother during their lifetime, at their death, the income to be paid my nieces and nephews and at their death, the principal to be divided between their heirs and assigns, share and share alike."

The third paragraph similarly devised a farm in Buckingham Township to be sold at the option of testatrix's husband with income to him for life, and at his death, "the income to be paid my nieces and nephews and at their death, the principal be paid their heirs and assigns, share and share alike." After a fourth paragraph bequeathing shares of stock to a named niece, Eve Louise Atkinson, the fifth paragraph gave the residuary estate to the trustee, "the income to be paid my Husband and Mother during their lifetime. At their death, the income to be paid my nieces and nephews and at their death, the principal to be paid their heirs and assigns, share and share alike."

Testatrix died without issue and was survived by her mother, Elmira H. Atkinson, who died on January 9, 1932, by her husband, Benjamin W. Horne, who died on December 12, 1954, by an only brother, J. Harper Atkinson, who is still living, and by four nieces and one nephew, Elizabeth (Atkinson) Myers, Jane (Atkinson) German, Robert H. Atkinson, Eve Louise (Atkinson) McCusker and Marie Adele (Atkinson) Pfeiffer, all of whom are children of J. Harper Atkinson. Such nieces and nephews are and have been the only persons who were so related to testatrix; all were born before the date of testatrix' will, are still living and respectively have had a child or children all born since testatrix' death.

The parcels of real estate mentioned in the will have been sold, and the proceeds thereof are included in the accounting filed by the trustee upon the death of Benjamin W. Horne in 1954. The court appointed an auditor to ascertain the present distribution of the estate. He has filed a learned and comprehensive report recommending that the provisions for nieces and nephews be construed to constitute a gift to a class which legally would not be considered closed either as

of the date of death of testatrix or as of the date of death of testatrix' husband, the surviving precedent life tenant. He accordingly concluded that the quoted testamentary provisions violate the rule against perpetuities and result in an intestacy, and therefore recommended that the estate should now be distributed to the legal representatives of testatrix' deceased husband and mother. Exceptions to the auditor's report, challenging such conclusions, were filed on behalf of the nieces and nephew and also by a guardian ad litem appointed to represent the interests of minor and possibly unborn and unascertained grandnieces and grandnephews.

We find no fault with the learned auditor's conclusion that the provisions for nieces and nephews constituted a gift to a class. See the definition of a class in this connection in Wood's Estate, 321 Pa. 497, 500, and Worstall's Estate, 125 Pa. Superior Ct. 133, 137, 139. The argument made on behalf of the nieces and nephew on the within exceptions to the effect that testatrix really intended to refer to them as particular individuals under a convenient generic description, and not as a class, is particularly untenable in view of her thrice-repeated use of the plural "nephews" when in fact she had only one relative of that description.

However we believe that the auditor did fall into error when he concluded that the class, by possibility, might not be ascertained and limited within the period prescribed by the rule against perpetuities. It is perfectly true, as he points out, that other nieces and nephews might conceivably have been born more than 21 years after the death of all persons who were living at testatrix' death and who were beneficially named or designated by the will. This possibility undoubtedly would invalidate the disputed clauses of the will if afterborn nieces and nephews even now not yet in being would also become members of the class, unless

testatrix' brother, J. Harper Atkinson, who is no-
where even mentioned in the will, might properly be
considered the measuring life within the meaning of
the rule. The latter question, however, which formed
a substantial part of the argument on the exceptions,
is of only academic interest in the view we take of the
case. That problem does not arise since the will should
be construed so that the description "nieces and
nephews" be confined to those comprising the class as
of the time distribution to them be provided for, i.e.,
at the death of the survivor of testatrix' husband and
mother.

It is well settled that where there is a gift to a class,
absent any expressed intent to the contrary, the num-
ber and composition of the class must be determined
as of the time appointed for distribution. In the usual
case, as where the gift be immediate, the cut-off date
would be that of testator's death, the time as of which
the will speaks (Calhoun v. Jester, 11 Pa. 474;
Landwehr's Estate, 147 Pa. 121; compare Darrah v.
Darrah, 202 Pa. 492), subject, of course, to the saving
effect of "lapse" statutes in the case of specified rela-
tives: Worstall's Estate, 125 Pa. Superior Ct. 133, and
cases therein cited. However, if distribution be post-
poned, the determination of the class will also be
deferred. Thus, where the gift be held in abeyance for
an intermediate life estate, the class will remain open
for the participation of additional eligible members
coming into existence during the life estate, but will
close at the moment of termination thereof: Minnig v.
Batdorff, 5 Pa. 503; Haskins v. Tate, 25 Pa. 249; List
v. Rodney, 83 Pa. 483; Day v. Thompson, 233 Pa. 550;
Hogg's Estate, 329 Pa. 163. If distribution be directed
when members of a class attain a particular age, the
class will remain open for afterborn members of the
class until the specified age be reached by one member

thereof at which time it will close to exclude any born thereafter: Heisse v. Markland, 2 Rawle 274; Gehr v. McDowell, 206 Pa. 100; Austin's Estate, 315 Pa. 449.

The rule of construction enunciated in the foregoing cases provides definiteness and certainty in otherwise ambiguous situations such as presented in the instant case. If distributions to a class were required to be postponed until all remote possibility of further members of the class be extinguished, then a testator's directions as to the time of payment would be ignored; conversely, if the intended distribution be timely made to those currently qualifying, then awkward problems of restitution by the current distributees for the benefit of future members would be required unless the class definitely be closed prior to such distribution. See Heisse v. Markland, supra. While it must be conceded that this rule of construction has arisen from considerations of practicality and necessity, at least in part, and that all the foregoing decisions applying the rule were concerned with distributions of principal, whereas the interests of the nieces and nephew in the instant case involve only income payments, as to which such considerations of necessity have lesser relevancy, nevertheless, we believe that it should be applied here as well.

The only decision which in any way militates against this conclusion is Earle Estate, 369 Pa. 52, where the Supreme Court, reversing the Orphans' Court of Philadelphia, permitted an afterborn grandchild to participate as a member of a class in the *income* from an allocated portion of the estate which composed part of a large corpus held upon trusts which, in duration, were independent of the life of such afterborn grandchild. Under the circumstances, and over the dissent of Justice Allen M. Stearne, four members of the court held that resort to rules of construction was unnecessary.

They placed great reliance upon the emphasized language: "I give and bequeath . . . for the benefit of *each* and *every male* child of my *sons* who *shall* by birth inherit and bear the name of Earle . . ." (italics supplied), particularly when considered in light of the family situation as of the time the will was written, finding that testator thereby intended to benefit not only those who did then meet the description, but also those who qualified in the future. They therefore held that since the factors of practicality and necessity were not involved, the fund being held in trust in any event and only income being affected, testator's expressed desires should be given effect. Significantly, also, it was there pointed out that the resulting interpretation would not violate the rule against perpetuities.

In the instant case, however, while considerations of necessity may not be compelling since no distribution of principal to nephews and nieces is involved, nevertheless, resort to rules of construction is necessary, inasmuch as testatrix has not expressed her intention as to when the class of nephews and nieces should close. Under such circumstances, we believe that the rule of construction under consideration should control, and the determination of the class should be made as of the time that such class comes into beneficial enjoyment, that is upon the death of the preceding life tenants.

In this we believe that we are supported by precedent not mentioned in or necessarily affected by Earle Estate, supra. In Wright's Estate, 284 Pa. 334, the rule of construction closing a class as of the time of distribution was applied notwithstanding that the gift was of income only. Testator in that case had set up a perpetual charitable trust and further directed that the trustees might " 'from the income of the said trust, pay to my nieces and nephews, by blood or marriage,

such sum or sums as in their discretion, after investigation, may be necessary.' " There, as in the instant case, it was contended that the quoted provision would include afterborn nephews and nieces and hence violate the rule against perpetuities. The Supreme Court disagreed, pointing out that the class closed as of the date of testator's death.

In the absence of any expressed testamentary intent to the contrary, and notwithstanding Earle Estate, we conclude that the foregoing decisions justify the conclusion that the intermediate life estate in favor of nieces and nephews was vested at the death of testatrix in those members of the class then in being, subject to opening and letting in additional nieces and nephews, if any, who might have been born during the continuance of the precedent estates. We further conclude that immediately upon the death of the husband as surviving prior life tenant, the class of nieces and nephews was closed and fixed so as to exclude from participation therein any further persons who still conceivably could meet the class description thereafter. It follows, of course, that the rule against perpetuities would thus be clearly satisfied even under the possibilities existing at testatrix' death, inasmuch as all nieces and nephews who could benefit would be finally and definitely ascertained during the existence of unquestioned lives in being.

We need not presently pass upon the validity of the ultimate remainder at the death of nieces and nephews whereby principal is given to "their heirs and (or) assigns, share and share alike". Conceivably, the rule of "vertical severability" as set forth in section 389 of the Restatement of the Law of Property and adopted as the law of Pennsylvania in Harrah Estate, 364 Pa. 451, may control on the perpetuities question. Whether or not that be true, however, depends at least in part upon a proper construction of the language used which

may present several difficult and perplexing problems. Suffice it to say at this time that we do not believe that such remainder, even if invalid as a perpetuity, is inseparable from the other provisions of the will or must carry down the life estates with it. The general scheme and dominant purpose of the will as a whole are not obviously intended to tie up the estate beyond the period allowed by law. Accordingly, the valid life estates will be sustained in any event, leaving the validity of the ultimate disposition for determination upon the death of the life tenants: Laucks Estate, 358 Pa. 369, and the many authorities therein cited; Sheasley Trust, 366 Pa. 316. At that time, all the possible parties in interest will be ascertained and may respectively be heard in their own right, not merely through a guardian ad litem who cannot possibly foresee and present arguments covering all eventualities.

It follows that the trusts provided for in the will should continue and that the estate should be retained by the trustee for that purpose. Accordingly, certain of the credit items in the trustee's account, in particular its commissions and counsel fees, based on the contemplated termination of the trust, should be revised or eliminated. In order to facilitate the matter, we will defer the absolute confirmation of the account and require the trustee to state and file a supplement thereto in the form of a statement of proposed distribution in which the trustee may restore to the estate such credit items as are not legally payable at this time, schedule the payment of expenses of audit as found by the auditor, award accrued net income to the respective nieces and nephews and distribute corpus to itself as continuing trustee. Upon the filing and confirmation of such statement of proposed distribution after notice and otherwise in compliance with our rules, the account, as so modified, will also be deemed confirmed absolutely.

No exceptions have been filed to the allowance by the auditor of reimbursement in the amount of $1,289.02 with interest thereon from December 12, 1954, for advancements by Benjamin W. Horne, now deceased, the same is hereby confirmed on the authority of the auditor's report.

*Order*

And now, this July 6, 1956, for the reasons stated in the foregoing opinion, exceptions to the report of the auditor numbered 1, 2 and 3 as filed on behalf of testatrix' nieces and nephews, and those numbered 1, 2 and 3 as filed by the guardian ad litem, are hereby sustained, and the report of the auditor to the extent thereof is hereby set aside. Exceptions numbered 4 in both sets of exceptions are denied, refused and overruled, and said report of the auditor is in all other respects confirmed absolutely.

It is further ordered that the First National Bank and Trust Company of Newtown, trustee under the will of the within decedent, prepare and file in accordance with the rules of this court an appropriate statement of proposed distribution in conformity with the foregoing opinion.