## Young Estate.

Argued March 21, 1956. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (RHODES, P. J., absent).

*Wm. Hensel Brown*, with him *Brown & Zimmerman*, for appellant.

*Harris C. Arnold*, with him *Wm. G. Johnstone, Jr., Herbert S. Levy, Louis S. May, Arnold, Bricker & Beyer, Windolph & Johnstone*, and *Appel, Ranck, Levy & Appel*, for appellees.

*John B. Rengier*, for appellees.

OPINION BY WRIGHT, J., July 17, 1956:

Susan Young, widow, died on April 14, 1954, leaving a will dated July 23, 1946. On the date the will was executed, Mrs. Young had six living children as follows: A son, Milton H. Newcomer, who died March 14, 1949, survived by three children; a daughter, Bertha Wolfred, who has one child, Raymond W. Thompson; a son, Abram L. Young, who died March 27, 1955, without children surviving; a son, Robert L. Young, who has no children; a son, Martin L. Young, who has four

children; and a son Roy L. Young, who has two children. We are here concerned with the construction of the italicized language in the following two paragraphs of Susan Young's will:

"FIFTH. After my entire estate has been converted into cash, I give and bequeath unto my son, Milton H. Newcomer, his heirs and assigns, one-sixth (1/6) of the net proceeds from the sale of my home property and the land adjoining, excepting however, the valuation money charged on the land hereinbefore devised to my son, Roy L. Young. *The residue of my estate I give and bequeath in equal shares unto my grandson, Raymond W. Thompson; my son, Abram L. Young; my son, Robert L. Young; the children of my son, Martin L. Young, who survive me; and my son, Roy L. Young, their heirs and assigns.* If the children of my son, Martin L. Young, have not yet reached the age of twenty-one (21) years at the time of my death, I nominate, constitute and appoint the Farmers Bank and Trust Company of Lancaster guardian of their several shares until they respectively arrive at the age of twenty-one (21) years.

"SIXTH. The shares of the residue hereinbefore bequeathed to Raymond W. Thompson, Abram L. Young and Robert L. Young shall be held in trust for them by the Farmers Bank and Trust Company of Lancaster. The said trustee shall pay the net income to them from their respective shares during their lifetime. The said trustee is authorized, empowered and directed to use the principal of their respective shares, if necessary, to properly care for them during any periods of sickness. Upon the death of Raymond W. Thompson, the balance of his share remaining shall be equally divided among all of my grandchildren living at the time of his death. *Upon the death of Abram L.*

*Young the balance of his share remaining shall be equally divided among the surviving children of my son, Milton L. Young.* Upon the death of Robert L. Young the balance of his share remaining shall be equally divided among the surviving children of Roy L. Young".

The court below first held that, under the fifth paragraph, each of the four children of Martin L. Young was entitled to receive one-fourth of one-fifth of the residue, as opposed to one-eighth of the residue. Subsequently considering the question of remaindermen entitled, under the sixth paragraph, to take after the death of Abram L. Young, the court below determined that the words "children of my son, Milton L. Young", meant the children of Milton H. Newcomer as opposed to the children of Martin L. Young. Martin G. Young, one of the four children of Martin L. Young, has appealed from the respective decrees of distribution.

(1) In the interpretation of a will, when the intention of the testator is not clear from the language employed, the intention must be ascertained from a consideration of the entire will and all the surrounding and attendant circumstances. See *Marshall Estate*, 377 Pa. 41, 103 A. 2d 420. Appellant contends that the testatrix, in paragraph five, intended that each of the four children of Martin L. Young should share equally with the other legatees specifically named, his theory being that the testatrix intended a distribution per capita. We do not agree.

While precedents are of little value, *Wood Estate*, 154 Pa. Superior Ct. 628, 36 A. 2d 835, there are four decisions, among the many examined, which merit special mention. In *Minter's Appeal*, 40 Pa. 111, the testator directed distribution "share and share alike, amongst the children of my brother, Adam Minter, de-

ceased, and the children of my brother Martin, and to my sister Barbara". It was held that Barbara took a third share, and that the children of Adam and the children of Martin, respectively, took a third share per stirpes as a class. In *Risk's Appeal*, 52 Pa. 269, the will provided that the residue should be equally divided "between my beloved children, George and Joseph, and the children of my beloved daughter Catharine (now wife of James Risk)". It was held that Catharine's children took as a class per stirpes. In *Ashburner's Estate*, 159 Pa. 545, 28 A. 361, the testator bequeathed his estate to his "daughters Harriet and Maria, and the children and heirs of my sons Benjamin and Charles, to be equally divided between them". It was held that distribution should be made per stirpes. In *Herman's Estate*, 90 Pa. Superior Ct. 512, the residue was bequeathed "unto Franklin H. Wogan, and the nephews and nieces of my late husband, Charles A. Herman, that survive me, share and share alike". It was held that Wogan took one-half and Herman's nephews and nieces took the other half as a class.

A gift to a class is defined as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift and to be ascertained in the future, who are to take in equal or other definite proportions, the share of each being determined for its amount upon the ultimate number: *Billings's Estate (No. 1)*, 268 Pa. 67, 110 A. 767. In our opinion the lower court properly determined the intent of testatrix to be that Martin's children should take a one-fifth share as a class per stirpes. We will set forth several evidences, inter alia, which lead to this conclusion.

First, the testatrix divides the residue into five designations, naming four individuals and one class. Second, she separated each designated share by a semi-

colon. See *Walker's Estate*, 376 Pa. 16, 101 A. 2d 652. It was stipulated that Mrs. Young's will was drawn by an attorney, and we may assume that the punctuation was used deliberately. Third, the fifth paragraph indicates that the testatrix was dividing her estate on the basis of the number of her children. She gives a one-sixth share in the proceeds of her home to her son Milton. Since Milton is not mentioned in the next sentence, it logically follows that testatrix intended a division of the residue into five shares, thus providing for her remaining children or their families. Fourth, nothing in the will indicates any special favoritism toward Martin L. Young or his family. It is reasonable to assume that, had the testatrix intended to prefer these grandchildren, she would have more clearly and explicitly indicated such desire. The use of the words "in equal shares" can be given no particular significance in this regard. They are as consistent with a division into five equal shares as with a division into eight equal shares. Similarly, the words "several shares" in the latter part of the paragraph do not indicate any particular quantum. Finally, the gift is to the children of Martin L. Young "who survive me". Such language clearly indicates a gift to a class, which might be larger or smaller at the time the gift became effective. If the contention of appellant should be upheld, it would in effect mean that the shares disposed of in the residuary clause might have varied from four to eight, or even more. For instance, had Martin L. Young had four additional children before the death of his mother, then the residuary shares would have been twelve in number, and the Martin L. Young children would have received eight shares, or two-thirds of the residue. It is improbable that the testatrix would have intended such uncertainty in the

amount of the shares of the beneficiaries specifically named.

(2) The second question presents more difficulty. Testatrix had no son by the name of Milton L. Young. However, she had a son named Martin L. Young, and also a son named Milton H. Newcomer. To adopt appellants contention we must substitute "Martin" for "Milton". To affirm the lower court we must substitute "H. Newcomer" for "L. Young". Upon first impression, neither alternative is particularly compelling. Appellant's secondary contention is that we should declare a partial intestacy. However, it is entirely clear that the testatrix intended to dispose of her entire estate. Furthermore, there is a strong presumption that a testator does not intend to die intestate: *Lyle Estate*, 374 Pa. 344, 97 A. 2d 830. A will must be construed to avoid an intestacy, if it is possible to do so: *Carmany Estate*, 357 Pa. 296, 53 A. 2d 731.

Where a latent ambiguity arises as to the identity of a legatee from the fact that no claimant exactly corresponds to the person named in the will, extrinsic evidence is admissible: *Worstall's Estate*, 125 Pa. Superior Ct. 133, 190 A. 162. It was stipulated that the scrivener "has no recollection of any particular instructions received with respect to the passage of the will which disposes of the remainder interest of the trust". The testimony in the record discloses nothing more than that the testatrix "was very close" to the children of Milton H. Newcomer, that Milton's children had spent considerable portions of their early lives with testatrix, and that they were on friendly terms "more so than some of them close to home".

It is the position of counsel for appellee that the gift under consideration is to the children of "my son Milton"; that testatrix had a son Milton; that the name

Milton, coupled with the words "my son", identifies only one person; and that the addition of the words "L. Young" should not nullify the intended gift. He argues, with a considerable degree of persuasion, that it is the normal and natural thing for a mother to speak of her children by their first names only. On the other hand, counsel for appellant argues that it would be much easier to mistake the name "Milton L. Young" for the name "Martin L. Young", than for the name "Milton H. Newcomer". In this connection we quote the following excerpt from the well considered opinion of President Judge BOWMAN:

"Exceptants claim they are the intended remaindermen on the theory that the initials M.L.Y. of their father's name, Martin L. Young, are the same as the corresponding initials of the name Milton L. Young; that the name 'Martin' contains the first, one of the middle and the last of the letters of the name 'Milton'; and that thus it would be much easier for one mistake the name of 'Milton L. Young' for the name of 'Martin L. Young' than it would for the name 'Milton H. Newcomer.' As we stated in our adjudication of August 5, 1955, this contention is a tenuous one. It overlooks the fact that the names of four of her sons end in 'L. Young.' To convert 'Milton' into 'Martin', under the facts here present, and on this play of letters would be nothing more than conjecture. Either the gift is to Milton's children or it is a nullity.

". . . In the will we are now considering Milton L. Young is designated by description. He is described as *my son* Milton. Testatrix had only one son answering to the name of Milton. Why should we suppose that when testatrix said 'the children of my son, Milton', she may have meant the children of her son Martin? She was approximately seventy-six years of age when she executed her will on July 23, 1946. Four of

her then living sons, as stated previously, had the family name Young and each used the middle initial. 'L'. It is understandable, therefore, why Milton should have been referred to as Milton L. Young, notwithstanding the fact that in paragraph FIFTH of the will he is correctly named. Having thus correctly described him in that paragraph, we are of the opinion that when she later refers to the children of her son, Milton L. Young, she meant and intended the children of her son, Milton H. Newcomer. The general plan of the distribution of her estate as revealed by the will supports this conclusion".

We have concluded not to disturb the interpretation placed upon the sixth paragraph by the court below. In *Wagner's Appeal*, 43 Pa. 102, the Supreme Court affirmed a determination by the lower court that a bequest "to Lavinia the daughter of my brother John" meant Cassandra, John Lauer's daughter, as opposed to Lavinia, daughter of testator's cousin, Abraham Lauer. We deem it appropriate to quote the concluding sentence from the opinion of Mr. Justice WOODWARD in that case as follows: "In such an equal balance of circumstances, the presumption of law is that the court below got at the intention of the testator, and finding nothing upon the record to displace that presumption, we will let it stand".

Decrees affirmed.