## Ramsey Estate

*William N. J. McGinnis, Ricard W. Thorington* and *Edmonds, Obermayer & Rebmann,* for accountants.

*William L. Huganir* and *Samuel K. White,* for claimant.

TAXIS, P. J., December 10, 1957.—The account shows a balance for distribution of $234,380.19, composed of the securities more particularly set forth on page 2 of the account, and cash.

Mary H. Ramsey, the estatrix, died on September 15, 1956, leaving a holographic will dated April 8, 1946, which reads in full as follows:

"I, Mary H. Ramsey of Lower Merion Township, being of sound mind and body make this my last Will & Testament. After expenses are paid I leave to my cousins Elizabeth G. McKee and Emily C. McKee and to my sister Emily Hamilton each three thousand dollars. To my brother E. Ellis Ramsey one-seventh of the remainder and the rest to be divided equally among my nieces and nephews.

"I appoint Bryn Mawr Trust Co. and my brother E. Ellis Ramsey as executors."

A question for determination arises by reason of the fact that one of the nephews, Lieutenant John E. Ramsey, son of William H. C. Ramsey, was determined by the Secretary of Navy to be missing in action as of July 25, 1946, when the airplane which he was flying in a patrol bombing squadron failed to return from an antishipping sweep along the west coast of Korea. A copy of said finding by the Secretary of Navy was submitted to the court. Under the Missing Persons Act of March 7, 1942, 56 Stat. 143, his death is presumed to have occurred on July 25, 1946, which is subsequent to the date of the execution of testatrix' will. John E. Ramsey was survived by a child, Carole Ramsey, on whose behalf a claim was made for the share to which her father was entitled, if any.

Ordinarily, in a gift to a class, the membership of the class is composed of those persons fitting that description at testatrix' death, so that if a prospective

member dies in the testatrix' lifetime, the surviving members constitute the class and take the whole. However, the Wills Act of 1947, sec. 14(8), makes an exception and within the favored relationship there set forth requires that the class be preliminarily determined at the date of the execution of the will and if a member dies thereafter in the testatrix' lifetime, that member's issue, if any, is substituted. On April 8, 1946, therefore, when this will was written and the class preliminarily determined, John E. Ramsey was alive. He was not declared dead until July 25, 1946, and "such a finding by the United States Government relieved the orphans' court from the necessity of fixing such date": Millar Estate, 356 Pa. 56. See Kleinhofer Estate, 1 Fiduc. Rep. 389; Bregy, Intestate, Wills and Estates Acts of 1947, pages 3259 and 3260. See Worstall's Estate, 125 Pa. Superior Ct. 133, 137. I conclude, therefore, that John E. Ramsey was a member of the class of "nieces and nephews" designated by the testatrix and the gift to him is saved from lapse by section 14(8) of the Wills Act of 1947, and Carole Ramsey is entitled to 1/14th of 6/7th or 3/49ths share of residue.

A second question arises concerning an interpretation of the phrase "after expenses are paid." Are the three preceding legacies of $3,000 each free of Pennsylvania transfer tax and Federal estate tax? The question is, what did testatrix mean by the use of the word "expenses," for, if it appears that she intended the word "expenses" to include taxes as well as debts, funeral expenses and costs of administration, then the legacies are payable free of tax. In Brown's Estate, 208 Pa. 161, testatrix provided that residuary estate be held in trust and "after taking any and all necessary expenses" to divide the income in equal shares

among persons named. It was held that the use of the word "expenses" was sufficient to include the payment of the taxes charged upon the legacies. Somewhat similarly, in Jeffery's Estate, 333 Pa. 15, 19, certain deeds of trust executed by decedent in her lifetime required the trustee to pay out of the trust estate all "costs, charges and expenses," of the trust estate. The court there held that this language indicated an intention on the part of the settlor to provide for the apportionment of the Federal estate tax entirely independently of the Apportionment Act of 1937.

I conclude from examination of these authorities and a careful study of the testatrix's will that the word "expenses" as used in this holographic instrument was intended by the testatrix to free these three legacies of Pennsylvania transfer inheritance tax and without apportionment of the Federal estate tax. With these exceptions, apportionment is hereby directed of Federal estate tax among all persons interested in property includible in gross estate for Federal tax purposes as provided by the Estate Tax Apportionment Act of August 24, 1951, P. L. 1405. . . .

And now, December 10, 1957, this adjudication is confirmed nisi.